UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RAUL FOJAS, Derivatively On Behalf of ALLSTATE CORP., <br><br> Plaintiff, <br><br> vs. <br><br> F. DUANE ACKERMAN, JAMES G. ANDRESS, ROBERT D. BEYER, W. JAMES FARRELL, JACK M. GREENBERG, RONALD T. LEMAY, EDWARD M. LIDDY, J. CHRISTOPHER REYES, H. JOHN RILEY, JR., JOSHUA I. SMITH, JUDITH A. SPRIESER, MARY ALICE TAYLOR, THOMAS J. WILSON, <br><br> Defendants, <br><br> -and- <br><br> ALLSTATE CORP., a Delaware corporation, <br><br> Nominal Defendant. | 08 C 423 <br><br> Civil Action No. <br><br> JUDGE HART <br> MAGISTRATE JUDGE MASON <br><br> JURY TRIAL DEMANDED |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, GROSS MISMANAGEMENT, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT**

Plaintiff, by his attorneys, submits this Verified Shareholder Derivative Complaint (the "Complaint") against the defendants named herein.

### NATURE OF THE ACTION

1. This is a shareholder derivative action brought by a shareholder of Allstate Corp. ("Allstate" or the "Company"), on behalf of the Company against certain of its officers and directors seeking to remedy defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, and waste of corporate assets that are occurring.

2. Defendants' wrongful course of conduct, as described herein, has exposed the Company to regulatory liability, judicial fines and caused substantial losses to Allstate and other damages, such as to its reputation and goodwill.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. §1332(a)(2), because complete diversity exists between the plaintiff and each defendant, and the amount in controversy exceeds $75,000. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

3. This Court retains general jurisdiction over each named defendant who is a resident of Illinois. Additionally, this Court has specific jurisdiction over each named non-resident defendant because these defendants maintain sufficient minimum contacts with Illinois to render jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Allstate maintains operations in Illinois, and because the allegations contained herein are brought derivatively on behalf of Allstate, defendants' conduct was purposefully directed at Illinois. Defendants' conduct arose out of Illinois, where Allstate maintains its corporate headquarters. Finally, exercising jurisdiction over the named non-resident defendants is reasonable.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because one or more of the defendants either resides in or maintains executive offices in this District, and a substantial portion of the transactions and wrongs that are the subject of this complaint, including the defendants' primary participation in the wrongful acts detailed herein, aiding and abetting, and conspiracy in violation of fiduciary duties owed to Allstate, occurred in substantial part in this District. Finally, defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

5. Plaintiff Raul Fojas ("Plaintiff"), a resident of Queens County, New York, is, and was at all times relevant hereto, an owner and holder of Allstate common stock.

6. Nominal defendant Allstate is a corporation organized and existing under the laws of the State of Delaware with its headquarters located at 2775 Sanders Road, Northbrook, Illinois. Nominal defendant Allstate through its subsidiaries, provides property-liability insurance, as well as other types of insurance in the United States and Canada. The Company primarily sells private

passenger automobile and homeowners insurance through independent and specialized brokers. Allstate also sells life insurance, annuity, and group pension products through agents. Allstate's common stock is traded on the New York Stock Exchange under the symbol "ALL".

7. Defendant F. Duane Ackerman ("Ackerman") is and was a director of Allstate since 1999 and former Chairman of BellSouth Corp. Ackerman is a resident of Georgia.

8. Defendant James G. Andress ("Andress") is and was a director of Allstate since 1993 and former Chairman and Chief Executive Officer of Warner Chilcott PLC, a pharmaceutical company. Andress is a resident of Illinois.

9. Defendant Robert D. Beyer ("Beyer") is and was a director of Allstate since 2006 and Chief Executive Officer of TCW Group, Inc., an investment management firm, since 2005. Beyer is a resident of California.

10. Defendant W. James Farrell ("Farrell") is and was a director of Allstate since 1999 and former Chairman of Illinois Tool Works, Inc., a manufacturer of highly engineered fasteners, components, assemblies and systems. Farrell is a resident of Illinois.

11. Defendant Jack M. Greenberg ("Greenberg") is and was a director of Allstate since 2002 and Chairman of The Western Union Company since September 2006. Greenberg is a resident of Illinois.

12. Defendant Ronald T. LeMay ("LeMay") is and was a director of Allstate since 1999 and Industrial Partner of Ripplewood Holdings, LLC, a private equity fund, since October 2003. LeMay is a resident of Missouri.

13. Defendant Edward M. Liddy ("Liddy") is and was a director of Allstate since 1999 and former Chief Executive Officer and Chairman. Liddy is a resident of Illinois.

14. Defendant J. Christopher Reyes ("Reyes") is and was a director of Allstate since 2002 and Chairman since January 1998 of Reyes Holdings, LLC, and its affiliates, a privately held food and beverage distributor. Reyes is a resident of Illinois.

15. H. John Riley, Jr. ("Riley") is and was a director of Allstate since 1998 and former Chairman of Cooper Industries Ltd., a diversified manufacturer of electrical products and tools and hardware. Riley is a resident of Texas.

16. Joshua I. Smith ("Smith") is and was a director of Allstate since 1997 and Chairman and Managing Partner since 1999 of The Coaching Group, a management consulting firm. Smith is a resident of Maryland.

17. Judith A. Sprieser ("Sprieser) is and was a director of Allstate since 1999 and former Chief Executive Officer of Transora, a technology software and services company. Sprieser is a resident of Illinois.

18. Mary Alice Taylor (Taylor) is and was a director of Allstate since 2000 and an active and independent Business Executive. Taylor is a resident of North Carolina and/or Alabama.

19. Thomas J. Wilson ("Wilson") is and was a director of Allstate since 2006 and President and Chief Executive Officer since January 2007. Wilson is a resident of Illinois.

20. The defendants identified in ¶¶7-19 are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

21. By reason of their positions as officers, directors and/or fiduciaries of Allstate and because of their ability to control the business and corporate affairs of Allstate, the Individual Defendants owed Allstate and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Allstate in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Allstate and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

22. Each director and officer of the Company owes to Allstate and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly-held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations so that the market price of the Company's stock would be based on truthful and accurate information.

23. The Individual Defendants, because of their positions of control and authority as directors and/or officers of Allstate, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial and directorial positions with Allstate, each of the Individual Defendants had access to adverse, non-public information about the claims paying procedures of Allstate and its stated position before insurance regulatory agencies, state and federal courts, policyholders and its shareholders.

24. At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Allstate, and was at all times acting within the course and scope of such agency.

25. To discharge their duties, the officers and directors of Allstate were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of Allstate were required to, among other things:

    (a) manage, conduct, supervise and direct the business affairs of Allstate in accordance with all applicable law (including federal and state laws, government rules and regulations and the charter and bylaws of Allstate);

    (b) neither violate nor knowingly permit any officer, director or employee of Allstate to violate applicable laws, rules and regulations;

    (c) establish and maintain systematic and accurate records and reports of the business and affairs of Allstate and procedures for the reporting of the business and affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

    (d) ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority;

    (e) conduct the affairs of the Company in an efficient, business like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(f) properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's operations; and

(g) remain informed as to how Allstate conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state laws.

26. Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Allstate, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

27. The Individual Defendants breached their duties of loyalty and good faith by allowing the Company to deliberately avoid producing documents in litigation and to regulatory agencies subjecting Allstate to fines, sanctions, excessive litigation costs and injunctive relief. As a result of defendants' actions and course of conduct, the Company is now barred from writing new insurance policies in Florida, a market that generated $1.9 billion in revenue in 2006. As a result, Allstate has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

(a) Costs incurred for legal fees paid to outside counsel and consultants;

(b) Costs incurred to defend its position before regulatory agencies;

(c) Lost profits as a result of being barred in Florida from selling policies; and

(d) Costs incurred from directing manpower to conceal certain documents from public scrutiny.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

28. In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

29. During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did:

 (a) conceal the fact that the Company was deliberately withholding information about its improper claims paying policies in order to allow defendants to artificially inflate the price of the Company's shares;

 (b) subject the company to fines, suspensions and other sanctions; and

 (c) maintain the Individual Defendants' executive and directorial positions at Allstate and the profits, power and prestige that the Individual Defendants enjoyed as a result of these positions.

30. In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

31. The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least September, 2006 and continuing thereafter. During this time the Individual Defendants caused the Company to conceal the true fact that Allstate was violating state laws.

32. The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement and waste of corporate assets; to conceal adverse information concerning the Company's method of paying on policies to artificially inflate the price of Allstate common stock so they could protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof.

33. The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently flout regulatory agencies and the judiciary. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

34. Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## BACKGROUND OF THE WRONGDOING

35. In 1992, Allstate hired McKinsey & Co. ("McKinsey"), a global management consulting company which assists corporate executives in identifying ways to improve the performance of the company, to "redesign" Allstate's claims-handling procedures. The "new" claims handling procedure was implemented by Allstate in 1995. According to the McKinsey reports, the claims handling procedure would increase Allstate's stock price and add $700 million to Allstate's revenue.

36. The engagement of McKinsey lasted approximately five years, during which time McKinsey constantly updated Allstate management in reports and power-point presentations ("McKinsey reports"). Certain of the McKinsey reports came to light in *Geneva Hager v. Allstate Ins. Co.*, 98-cl-2482, Fayette Circuit Court Kentucky, a civil action filed by an Allstate policyholder against the Company alleging bad faith claims handling. During the trial in October, 2007, the plaintiff's lawyer outlined how the McKinsey reports essentially detail a course of action designed to avoid paying claims, and when claims were paid - - pay less.

37. According to a July 9, 2006 article in the *Lexington Herald-Leader*, the McKinsey reports were obtained by lawyers in several additional civil cases, but were all subject to protective orders, until a bad faith claim was asserted in New Mexico ("New Mexico litigation"). In the New

Mexico litigation, the plaintiff's attorney refused to consent to a protective order. Allstate argued that the McKinsey reports were trade secrets, and appealed the trial court's findings that they did not constitute trade secrets. Following the unsuccessful appeal on that order two years later, Allstate refused to turn over the McKinsey reports, leading to the entry of a default judgment against Allstate, which again Allstate appealed.

38. In the *Hager* litigation, the judge ruled in 2001 that the McKinsey reports were not trade secrets; in order to avoid the inevitable appeal, however, the parties agreed to treat the documents confidential to keep the litigation proceeding. Eventually, certain pages of the McKinsey report were made public during the October 2007 trial, but the majority remains confidential.

39. Allstate continues to attempt to maintain the confidentiality of the McKinsey reports, no matter what effect it has on the Company, its reputation or its finances.

40. In a September 12, 2007 order entered in an action styled *Dale Deer v. Allstate Ins. Co.*, Case No. 0516-CV24031, Circuit Court of Jackson County, Missouri, Allstate failed to respond to an Order to Show Cause issued to address, in part, Allstate's prior violations of two court orders requiring responses to discovery, and was found in civil contempt of court. The court ordered Allstate to pay $25,000 per day beginning September 14, 2007 until the discovery sought was produced. Allstate instead appealed, and the appeal is pending. If penalties accrue to date, Allstate would be faced with sanctions of approximately $3 million at this juncture.

41. There can be no doubt that Allstate has been impacted. By October, 2007, Allstate stock had declined 12% in New York Stock Exchange Composite trading, compared with a decrease of less than 1% in the 24-member KBW Insurance Index.

42. In November, 2007, the Louisiana Attorney General, Charles C. Foti, Jr. sued Allstate and other insurers claiming they engaged in an elaborate price-fixing scheme after Hurricane Katrina and Rita to manipulate damage estimates and offer reduced claims payments, in an action styled *State of Louisiana v. Allstate Ins. Co., et al*, 07-14595, Louisiana Civil District Court, Orleans Parish.

43. On October 16, 2007, the Florida Office of Insurance Regulation ("FOIR") announced that it had issued subpoenas to all Allstate companies doing business in Florida to direct

them to testify and produce documents about Allstate's reinsurance program, the relationship to risk modeling companies, and insurance rating organizations. The subpoenas sought, *inter* alia, the McKinsey reports. The subpoenas were in response to Allstate's rate increase requests in Florida of up to 41.9% following the enactment in January, 2007, by the Florida legislature requiring insurers to reduce rates charged for homeowners insurance. Florida legislators voted in January 2007 to double the size of the state-run catastrophe fund and sell the coverage to insurers at below-market rates. The savings from the low-cost reinsurance provided by Florida was required to be passed along to policyholders. Allstate applied to raise their rates instead, saying their estimates of rising costs offset the state subsidy. A public hearing was scheduled for January 15-16, 2008.

44. The Florida inquiry was spurred, in part, by a July 18, 2007 report titled *The "Good Hands" Company or a Leader in Anti-Consumer Practice? Excessive Prices and Poor Claims Practices at the Allstate Corporation* by J. Robert Hunter ("Hunter Report").[1]

45. The Hunter Report made the following specific findings regarding Allstate's claims handling practices:

> In 1992, Allstate adopted the "Claims Cores Process Redesign" (CCPR) system recommended by McKinsey & Company. As explained in the book *"From 'Good Hands' to Boxing Gloves,"* the CCPR was intended to "radically alter our whole approach to the business of claims." McKinsey saw the CCPR as a "Zero Sum Game."
>
> As the key element of CCPR, Allstate uses a program known as "Colossus," sold by Computer Sciences Corporation (CSC). CSC sales literature touted Colossus as "the most powerful cost savings tool" and also suggested that, "the program will immediately reduce the size of bodily injury claims by up to 20 percent." As reported in the book *From "Good Hands" to Boxing Gloves*, …any insurer who buys a license to use Colossus is able to calibrate the amount of 'savings' it wants Colossus to generate…<u>If Colossus does not generate 'savings' to meet the insurer's needs or goals, the insurer simply goes back and "adjusts" the benchmark values until Colossus produces the desired results.</u>" (Emphasis Added)

---

[1] J. Robert Hunter is one of the nation's leading insurance consumer advocates and Director of Insurance for the Consumer Federation of America.

> Programs like Colossus are designed to systematically reduce payments to policyholders without adequately examining the validity of each individual claim. The use of these programs appears to sever the promise of good faith that insurers owe their policyholders. <u>Any increase in profits that results from arbitrarily selected reductions in claims payments cannot be considered to be legitimate.</u> (Emphasis Added) The introduction of these systems could explain part of the decline in benefits that policyholders have been receiving as a percentage of premiums paid in recent years by Allstate and later, to a lesser degree, by the insurance industry. Most, but not all, major insurance companies are now using Colossus. In most cases the purchase of the system was made by insurers following the marketing efforts of CSC, which promise significant savings in claims costs.

46. On November 16, 2007, FOIR denied Allstate's proposed rate increases for homeowners insurance, stating that "the rates proposed by the Allstate companies do not pass along all the savings reasonably available as a result of the expansion of the Florida Hurricane Catastrophe Fund".

47. On January 10, 2008, Bloomberg reported that insurance executives would be called to testify before a special committee of Florida senators investigating the cost of home insurance in the hurricane-prone state. The newly formed insurance panel intended to subpoena senior insurance managers to force them to appear at the hearing and explain why prices haven't fallen in line with projections after the state passed an insurance reform bill in Jan. 2007, said state Senator Steve Geller a democrat from Broward County. "We don't want to hear from the local lobbyists or lawyers," Geller said in an interview. "If we subpoena State Farm, I want Mr. Farm. If it's Allstate, I want Mr. State. At Geico, we want the lizard."

48. According to an Immediate Final Order filed January 17, 2008 by FOIR, Allstate was obligated to produce documents responsive to the FOIR subpoena by November 30, 2007. On that date, Allstate produced 27,000 pages of documents that were non-compliant to the instructions contained in the subpoena and filed 51 pages of "frivolous" objections with FOIR. Although Allstate subsequently produced additional documents in late December 2007, they were also "non-compliant" and included public documents already in the possession of FOIR.

49. On January 15, 2008, the first day of the scheduled hearing between Allstate and FOIR, FOIR halted its public hearing with Allstate due to a "total lack of cooperation and responsiveness" on the part of the Company.

50. Thereafter, on January 16, 2008, FOIR Commissioner Kevin McCarty announced that he intended to suspend the certificate of authority of all Allstate companies to write new insurance in Florida until they complied with the subpoena. "In view of Allstate's ongoing, blatant disregard of our subpoenas, I have little choice but to take an action that will send a clear message about how seriously I am taking this issue," said Commissioner McCarty. "Suspending their certificate of authority to write new business in our state should make my point … If Allstate is willing to pay $25,000 per day in fines to a Missouri court for its ongoing failure to provide similar documents, it's obvious to me that it will take more than a monetary sanction to get them to comply with our subpoenas."

51. According to the January 16 FOIR press release, Allstate was to have provided all appropriate responsive documents to the subpoena at or before the January 15 hearing, but failed to do so.

52. McCarty stated "It [the suspension] will be lifted when I am satisfied that we have received each and every document we need to properly investigate the important issues before us. It continues to trouble me that Allstate has not complied with our subpoenas and is not willing to explain to us their relationships with rating agencies, modeling companies and trade groups and how these relationships with rating agencies, modeling companies and trade groups and how these relationships might have influenced the huge rate increases they have requested. This clearly cannot be in the best interests of Florida consumers."

53. This is the first time FOIR has suspended a company for failure to provide documents.

54. On January 17, 2008, FOIR issued its Immediate Final Order prohibiting Allstate from writing new policies in Florida. Allstate wrote approximately $1.9 billion of auto insurance sales in Florida in 2006, compared with $1.7 billion in 2004.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

55.     Plaintiff brings this action derivatively in the right and for the benefit of Allstate to redress injuries suffered, and to be suffered, by Allstate as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement and waste of corporate assets as well as the aiding and abetting thereof, by the Individual Defendants. Allstate is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

56.     Plaintiff will adequately and fairly represent the interests of Allstate in enforcing and prosecuting its rights.

57.     Plaintiff is and was an owner of the stock of Allstate during all times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

58.     The current Board has thirteen members and includes the following individuals: defendants Ackerman, Andress, Beyer, Farrell, Greenberg, LeMay, Liddy, Reyes, Riley, Smith, Spreiser, Taylor and Wilson. Plaintiff has not made any demand on the present Board of Allstate to institute this action because such a demand would be a futile, wasteful and useless act, particularly for the following reasons:

(a)     As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and Board meetings, each of the defendants knew of the Company's policy of protecting internal information from disclosure regarding Allstate's practice of minimizing claims payments to policyholders;

(b)     The principal professional occupation of defendants Liddy and Wilson are their employment with Allstate, pursuant to which they received and continue to receive substantial monetary compensations and other benefits. For Fiscal Year 2006, Allstate paid defendant Liddy almost $24 million in salary, stock awards and other compensation. For Fiscal Year 2006, Allstate paid defendant Wilson almost $8 million in salary, stock awards and other compensation. Accordingly, defendants Liddy and Wilson lack independence from defendants Ackerman, Beyer,

Farrell, Greenberg, LeMay, Reyes and Taylor, defendants who are not disinterested and/or independent and who exert influence over defendants Liddy and Wilson's compensation by virtue of their positions as members of the Compensation and Succession Committee ("Compensation Committee"). The Compensation Committee annually reviews and approves corporate goals and objectives relevant to Wilson and Liddy's compensation, evaluates Allstate's performance in light of those goals and objectives, and approves Wilson and Liddy's compensation level based upon this evaluation. This lack of independence renders a majority of the Board incapable of impartially considering a demand to commence and vigorously prosecute this action;

       (c)    Allstate's non-employee directors receive substantial compensation in the form of annual retainers, stock option grants and Board and committee fees. Specifically, during Fiscal Year 2006, Allstate paid all directors except Beyer $226,361 or more. Accordingly, these defendants are interested in maintaining their positions on the Board so as to safeguard their substantial compensation and unvested stock options. Thus, demand upon these defendants is futile;

       (d)    The entire Allstate Board and senior management participated in the wrongs complained of herein. Allstate's directors are not disinterested or independent, as all defendants served on the Allstate Board since September 2006. Pursuant to their specific duties as Board members, each was charged with the management of the Company and to conduct its business affairs. Each of the above referenced defendants breached the fiduciary duties that they owed to Allstate and its shareholders in that they failed to prevent and correct Allstate's policy of thwarting authority to conceal its claims-paying procedures. Thus, the Allstate Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because its members are interested personally in the outcome as it is their actions that have subjected Allstate to millions of dollars in liability for possible violations of applicable state insurance laws and non-compliance with court orders;

       (e)    Each of the key officers and directors knew of and/or directly benefited from the wrongdoing complained of herein;

       (f)    The Individual Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from

Allstate's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties;

  (g) In order to bring this suit, all of the directors of Allstate would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

  (h) The acts complained of constitute violations of the fiduciary duties owed by Allstate's officers and directors and these acts are incapable of ratification;

  (i) Each of the Individual Defendants authorized and/or permitted the blatant disregard of subpoenas and court orders, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them;

  (j) Allstate has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Allstate any part of the damages Allstate suffered and will suffer thereby;

  (k) If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against them contained in civil complaints alleging bad faith claims handling. In essence, they would be forced to take positions contrary to the defenses they will likely assert in those actions.

  59. Plaintiff has not made any demand on shareholders of Allstate to institute this action since such demand would be a futile and useless act for the following reasons:

  (a) Allstate is a publicly held company with almost 570 million shares outstanding, and thousands of shareholders;

  (b) Making demand on such a number of shareholders would be impossible for Plaintiff who has no way at this juncture of finding out the names, addresses or phone numbers of shareholders; and

  (c) Making demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT I

### Against All Defendants for Breach of Fiduciary Duty

60.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

61.     The Individual Defendants owed and owe Allstate fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe Allstate the highest obligation of good faith, fair dealing, loyalty and due care.

62.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

63.     Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to violate insurance regulatory agencies and court directives. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

64.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Allstate has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

65.     Plaintiff, on behalf of Allstate, has no adequate remedy at law.

## COUNT II

### Against All Defendants for Abuse of Control

66.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

67.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Allstate, for which they are legally responsible.

68.     As a direct and proximate result of the Individual Defendants' abuse of control, Allstate has and will continue to sustain significant damages.

69.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

70.     Plaintiff, on behalf of Allstate, has no adequate remedy at law.

## COUNT III

### Against All Defendants for Gross Mismanagement

71.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

72.     By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Allstate in a manner consistent with the operations of a publicly held corporation.

73.     As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Allstate has sustained and will continue to sustain significant damages in excess of hundreds of millions of dollars.

74.     As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

75.     Plaintiff, on behalf of Allstate, has no adequate remedy at law.

## COUNT IV

### Against All Defendants for Waste of Corporate Assets

76.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

77.     As a result of the flagrant flouting of authority, and by failing to properly consider the interests of the Company and its public shareholders by failing to comply with the requests by regulators and courts, defendants have caused Allstate to waste valuable corporate assets by paying incentive based bonuses to certain of its executive officers and incur potentially millions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions.

78.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement and waste of corporate assets;

B.     Directing Allstate to take all necessary actions to reform and improve their internal procedures to comply with applicable laws and to protect Allstate and its shareholders from a repeat of the damaging events that have occurred;

C.     Awarding to Allstate restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

D.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury.

Dated: January 18, 2008

**KRISLOV & ASSOCIATES, LTD.**

By  s/ Clinton A. Krislov_____
Clinton A. Krislov
Jeffrey M. Salas
20 North Wacker Drive
Chicago, Illinois  60606
Tel: 312-606-0500
Fax: 312-606-0207

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
nfaruqi@faruqilaw.com
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9931

                    **FARUQI & FARUQI, LLP**
Emily C. Komlossy
Fla. Bar No. 007714
ekomlossy@faruqilaw.com
3595 Sheridan Street, Suite #206
Hollywood, Illinois 33020
Tel: 954-239-0280
Fax: 954-239-0281

*Attorneys for Plaintiff*

## VERIFICATION

I, Nadeem Faruqi, hereby declare as follows:

1.	I am a member of the law firm of Faruqi & Faruqi, LLP, counsel for plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. I am informed and believe the matters therein are true and on that ground allege that the matters stated therein are true.

2.	I make this Verification because plaintiff is absent from the County of New York where I maintain my office.

Executed this 18th day of January, 2008, at New York, New York.

_____
Nadeem Faruqi