IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAUL FOJAS, Derivatively on Behalf of ALLSTATE CORP., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| F. DUANE ACKERMAN, JAMES G. ANDRESS, ROBERT D. BEYER, W. JAMES FARRELL, JACK M. GREENBERG, RONALD T. LEMAY, EDWARD M. LIDDY, J. CHRISTOPHER REYES, H. JOHN RILEY, JR., JOSHUA I. SMITH, JUDITH A. SPRIESER, MARY ALICE TAYLOR, THOMAS J. WILSON, | ) ) ) ) ) ) ) ) ) | No. 1:08 CV 00423<br><br>Judge William T. Hart |
| Defendants,<br>- and - | ) ) | |
| ALLSTATE CORP., a Delaware corporation, | ) ) | |
| Nominal Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO ADEQUATELY PLEAD DEMAND FUTILITY

Robert J. Kopecky
Sallie G. Smylie, P.C.
Jonathan E. Hinkemeyer
KIRKLAND & ELLIS LLP
200 E. Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*Counsel for Allstate Corporation*

April 25, 2008

Peter C. John
Steven J. Roeder
WILLIAMS MONTGOMERY & JOHN LTD
20 North Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 443-3200

    -and-

Greg A. Danilow
Stephen A. Radin
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

*Counsel for Individual Defendants*

## INTRODUCTION

Plaintiff, a purported shareholder of Allstate Corporation, seeks to bring this case on behalf of Allstate against Allstate's Board of Directors. He asks this Court to allow him to usurp the authority of Allstate's board – consisting of eleven outside, independent directors and only two members of Company management – and stand in the shoes of the Company to bring this lawsuit. Plaintiff's claim of wrongdoing by the board does not stem from a particular decision made by the board – such as a decision to divest Allstate of a division or to merge with another company – but instead from decisions made by Allstate during discovery in litigation and regulatory matters to protect documents related to Allstate's insurance claims procedures as confidential trade secrets. Plaintiff alleges that the decisions to seek protective orders for Allstate's trade secrets constituted a "wrongful course of conduct" (Compl. ¶ 2) for which Allstate should pursue claims and hold its board accountable.

As a derivative action, the substantive law of Delaware (Allstate's state of incorporation) and Federal Rule of Civil Procedure 23.1 require that the plaintiff either make a demand on Allstate's board to bring this lawsuit, which plaintiff did not do (Compl. ¶ 58), or allege *with particularity* facts demonstrating that a demand would be futile because the board cannot fairly consider it. Fed. R. Civ. P. 23.1(b). Here, plaintiff has failed to plead any facts sufficient to establish that a demand must be excused as futile. Rather, all plaintiff offers are conclusory, generic allegations that the board did not properly oversee the company, and therefore would not be able to fairly consider a demand. But as the Delaware Supreme Court recently reiterated, and numerous courts around the country construing Delaware law have recognized, such a "lack of oversight" claim against a board is "'possibly the most difficult theory in corporation law upon which a plaintiff might hope to win judgment.'" *Stone v. Ritter*, 911 A.2d 362, 372 (Del. 2006) (quoting *In re Caremark Int'l Inc. v. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996)). Plaintiff has not come close to alleging the necessary particularized facts to support this theory. Accordingly, plaintiff's Complaint must be dismissed pursuant to Rule 23.1(b) and 12(b)(6).

## BACKGROUND FACTS

*The Parties.* Plaintiff Raul Fojas alleges that he is a shareholder of Allstate. (Compl. ¶ 5) Plaintiff seeks to bring this lawsuit in a derivative capacity on behalf of Allstate, alleging that certain officers and directors breached duties to the Company. (*Id.* ¶ 1) Nominal defendant Allstate Corporation is incorporated in Delaware and has its headquarters in Northbrook, Illinois.

(*Id.* ¶ 6) Allstate, through its subsidiaries, provides automobile and homeowners insurance to consumers in the United States. (*Id.*) Plaintiff has sued all thirteen members of Allstate's Board of Directors. (*Id.* ¶¶ 7-20) Only two of the thirteen members, Edward Liddy and Thomas Wilson, are alleged to be current or former Company officers. (*Id.* ¶¶ 13, 19) The remaining eleven directors are independent, outside directors who are not employed by Allstate.

*The Allegations.*[1] The Complaint alleges that the Individual Defendants breached their duties by "allowing the Company to deliberately avoid producing documents in litigation and to regulatory agencies subjecting Allstate to fines, sanctions, excessive litigation costs and injunctive relief." (*Id.* ¶ 27) The purported "wrongdoing" is the Company's effort to protect as trade secrets certain documents prepared by the consulting firm McKinsey & Co. that involve Allstate's claims handling procedures. (*Id.* ¶¶ 27, 35-36) In policyholder actions brought against Allstate, Allstate took the position that the requested documents were confidential trade secrets and should not be produced without a protective order. (*Id.* ¶ 37) Plaintiff alleges that where trial courts ruled that the documents were not trade secrets, Allstate still refused to produce the documents in order to appeal the resulting order of contempt. (*Id.* ¶¶ 37, 40) The Complaint, however, fails to allege any final decision or penalties in any of the cases; rather, they are alleged to be the subject of appeals. (*See id*. ¶¶ 37, 40) Further, there are no facts alleging that any of the Allstate directors made any of the litigation decisions in these cases.

While plaintiff references a few cases in which trial courts ruled that the documents should not be subject to protection, some appellate courts have held otherwise. In Indiana, for instance, the Court of Appeals held that the trial court "abuse[d] its discretion in denying Allstate's requests for a protective order." *Allstate Ins. Co. v. Scroghan,* 851 N.E.2d 317, 324 (Ind. App. Ct. 2006). The Court also upheld Allstate's decision to refuse to produce the documents in order to appeal the protective order issue. *Id*. at 322 ("while we certainly do not encourage parties to intentionally violate a discovery order … we can see the narrow situations, such as this one, where such a strategy may be utilized.")

---

[1] The facts here are based on the allegations in the Complaint and other matters of public record, including self-authenticating court filings, of which this Court may take judicial notice on a motion to dismiss. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). Defendants do not concede the truth of the allegations, but recognize that on a motion to dismiss, "[a]ll *well-pleaded* facts are accepted as true," while the Court is "not obliged to accept as true legal conclusions or *unsupported conclusions of fact*." *Hickey v. O'Bannon*, 287 F.3d 656, 657–58 (7th Cir. 2002) (emphasis added).

The Complaint also alleges that the Florida Office of Insurance Regulation (FOIR) issued a subpoena to Allstate as part of an investigation into the insurance rates of numerous insurance companies in Florida. (Compl. ¶¶ 43, 47) Although Allstate produced documents in response, the FOIR asserted that Allstate was noncompliant with its subpoena and suspended Allstate from writing new business in Florida. (*Id.* ¶¶ 48, 54) The suspension was not permanent, but would be lifted when the FOIR was "satisfied that we have received each and every document we need." (*Id.* ¶ 52) Plaintiff filed this action only *one day* after the FOIR's ruling.[2]

## ARGUMENT

**I.    PLAINTIFF'S COMPLAINT IS SUBJECT TO A STRICT REQUIREMENT OF FACTUAL PARTICULARITY.**

Because Allstate is a Delaware corporation, Delaware law governs whether plaintiff has standing to pursue his claim on Allstate's behalf. *Kamen v. Kemper Fin. Servs.,* 500 U.S. 90, 108-09 (1991). Under Delaware law, the decision to bring a lawsuit on behalf of a corporation is ordinarily at the discretion of its board of directors. Del. Code Ann. Tit. 8 § 141(a); *White v. Panic*, 783 A.2d 543, 550 (Del. 2001). Thus, before a shareholder can pursue a derivative claim, Delaware law requires that he must first make a demand on the corporation's board of directors, or establish that such a demand is excused as futile. *White*, 783 A.2d at 550.

The demand requirement stems from "the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders." *Fener v. Gallagher*, 2005 WL 2234656, at *4 (N.D. Ill. Sept. 8, 2005) (quoting *Kamen*, 500 U.S. at 96). This requirement recognizes "the fundamental precept that directors manage the business and affairs of corporations," *Aronson v. Lewis*, 473 A.2d 805, 811-12 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000), and serves "to insure that a stockholder exhausts his intracorporate remedies" as well as to "provide a safeguard against strike suits." *McSparran v. Larson*, 2006 WL 2052057, at *2 (N.D. Ill. May 3, 2006) (quoting *Aronson*, 473 A.2d at 811). This is more than a mere pleading requirement, "it is a substantive right" under Delaware law. *Starrels v. First Nat'l Bank*, 870 F.2d 1168, 1171 (7th Cir. 1989).

---

[2] The FOIR's order is currently stayed while appeals are pending. On April 4, 2008, a Florida appellate court affirmed the FOIR's authority to issue such an order. Allstate's subsequent motions for rehearing en banc and certification to the Florida Supreme Court are currently pending. *See* Case Docket, Ex. 1.

3

Federal Rule of Civil Procedure 23.1 requires that a shareholder derivative complaint "must … state *with particularity* any effort by the plaintiff to obtain the desired action from the directors … and the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3) (emphasis added). In this case, plaintiff did not make a demand on Allstate's Board. (Compl. ¶ 58) Thus, plaintiff must allege with particularity the reasons why a demand upon Allstate's Board is futile. *Levine v. Prudential Bache Props., Inc.*, 855 F.Supp. 924, 940 (N.D. Ill. 1994). "Because Rule 23.1 requires that Plaintiffs make particularized allegations, it imposes a pleadings standard higher than the normal standard applicable to the analysis of a pleading challenged under Rule 12(b)(6)." *In re Morgan Stanley Derivative Litig.*, 2008 WL 820718, at *3 (S.D.N.Y. March 27, 2008).

The Delaware Supreme Court has referred to this standard as setting "stringent requirements of factual particularity." *Stone v. Ritter*, 911 A.2d 362, 367 n.9 (Del. 2006). The heightened pleading requirement is designed to prevent shareholders from causing a corporation "to expend money and resources in discovery and trial in the stockholder's quixotic pursuit of a purported corporate claim based solely on conclusions, opinions or speculation." *Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000). Further, general allegations of purported collective wrongs by the board will not suffice; rather, "facts specific to each director" must be pleaded. *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007); *see also Postorivo v. AG Paintball Holdings, Inc.*, 2008 WL 553205, at *6 (Del. Ch. Feb. 29, 2008) (dismissing complaint that "alleges nothing close to the fact-intensive, director by director analysis required."). Pleading with particularity "means that a plaintiff must include 'the who, what, when, where and how.'" *McSparran v. Larson*, 2007 WL 684123, at *3 (N.D. Ill. Feb 28, 2007).

The Delaware Supreme Court has established two tests to determine whether a plaintiff has adequately pleaded demand futility. Where a plaintiff challenges a particular action or decision by the board, demand futility is evaluated by the test set forth in *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984). *Postorivo*, 2008 WL 553205, at *5. Under the *Aronson* test, a court "must decide whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 814. Where the plaintiff challenges conduct not involving a specific board decision – for example, an allegation that a company's board has failed to properly oversee the company – demand futility

4

is evaluated under the test set forth in *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993). *Stone*, 911 A.2d at 367. Under the *Rales* test, "a court must determine whether or not the particularized factual allegations … create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales*, 634 A.2d at 934.

Under either the *Rales* or the *Aronson* test, the plaintiff also "must overcome the powerful presumptions of the business judgment rule," which affords corporate directors a presumption that they act in good faith. *White*, 783 A.2d at 551 (quoting *Rales*, 634 A.2d at 933). This presumption is heightened in cases, like this one, where a majority of the board is made up of independent, outside directors. *See Leung v. Schuler*, 2000 WL 1478538, at *6 (Del. Ch. Oct. 2, 2000), *aff'd*, 783 A.2d 124 (Del. 2001); *Moran v. Household Int'l*, 490 A.2d 1059, 1074-75 (Del. Ch. 1985), *abrogated on other grounds by Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004).

Here, plaintiff does not plead with particularity any specific decision made by Allstate's board. There are no specific allegations that the board made any decision regarding document production issues, let alone any particularized facts when such decisions were made and who made them. Rather, the Complaint contains generalized allegations that the board "allow[ed] the Company to deliberately avoid producing documents in litigation and to regulatory agencies" and "failed to prevent and correct Allstate's policy of thwarting authority to conceal its claims-paying procedures." (Compl. ¶¶ 27, 58(d)) The Complaint does not allege with particularity that Allstate's directors had knowledge of or involvement in the alleged decisions regarding production of the McKinsey documents. Instead, plaintiff simply litters the Complaint with conclusory buzzwords that the directors "conceal[ed]" Allstate's withholding of documents or "knew" of and/or "permitted" the alleged wrongdoing. (*Id.* ¶¶ 29(a), 31, 34, 58(a), (e), (i), 63)

Because the Complaint fails to allege any facts that the board made any of the particular decisions challenged, *Rales* provides the appropriate test to determine whether plaintiff has successfully alleged demand futility. *See, e.g., Morgan Stanley*, 2008 WL 820718, at *4 (applying *Rales* where plaintiff alleged that the board "concealed" an adverse SEC notice but provided no "particularized allegations as to when any board member had any knowledge of the [SEC notice], no allegations explaining any process by which the board decided to omit the information, and no allegation that the board actively or purposefully made a decision to omit the

5

information"); *In re Forest Labs. Inc. Derivative Litig.*, 450 F.Supp.2d 379, 388, 390 (S.D.N.Y. 2006) (applying *Rales* where the complaint alleged that directors "authorized and/or permitted" the alleged wrongdoing "without any particularized allegations establishing … that the … Directors had knowledge" of the wrongdoing); *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995) (applying *Rales* where the complaint alleged that the board "failed to prevent" the wrongdoing and "conspired … to misrepresent the value of the corporation's stock" but did not allege "any specific board action that approved or ratified these alleged wrongdoings").

Even if *Aronson* supplied the applicable test against which to measure the Complaint, plaintiff has not satisfied that test either. Thus, regardless of whether *Rales* or *Aronson* applies, plaintiff fails to adequately plead demand futility and the Complaint should be dismissed.

## II. THE COMPLAINT FAILS TO SHOW DEMAND WOULD BE FUTILE UNDER THE *RALES* TEST.

As discussed above, where plaintiffs "do not challenge a particular business decision made by the board," the Court applies the test for demand futility set forth in *Rales*. *In re IAC/InteractiveCorp Sec. Litig.*, 478 F.Supp.2d 574, 598 (S.D.N.Y. 2007). *Rales* requires a court to analyze whether the complaint alleges particularized facts establishing that "either (1) the underlying conduct being challenged renders any of the directors 'interested' and, if so, whether any of the other directors are compromised in their ability to act independently of the interested directors; or (2) *at least half of the directors* face a sufficiently substantial threat of personal liability as to the conduct alleged in the complaint to compromise their ability to act impartially on a demand." *Desimone v. Barrows*, 924 A.2d 908, 928 (Del. Ch. 2007) (emphasis added) (citing *Guttman v. Huang*, 823 A.2d 492, 501-03 (Del. Ch. 2003)). Plaintiff's Complaint, barren of any particularized facts, satisfies neither of these strict requirements.

### A. There Are No Particularized Allegations That Any Director Is "Interested" or Lacks Independence.

Plaintiff's rote attempts to assert that the directors are interested or lack independence have been repeatedly rejected by Delaware courts and federal courts (construing Delaware law). There are no particularized allegations as to how any of the directors are "interested" at all. And because plaintiff has not pled facts that any directors are "interested," the Complaint does not, and cannot, allege that a majority of the board lacks independence from any "interested" director.

6

1. **Plaintiff Does Not Allege Particularized Facts That Any Directors Are "Interested."**

"A director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders," or "where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders." *Rales*, 634 A.2d at 936. The Complaint does not allege that any of the directors is interested in the "transaction" at issue – Allstate's decision to seek a protective order for documents produced in litigation or administrative proceedings. (Compl. ¶ 27) Indeed, the Complaint does not allege, nor is it even plausible, that the directors would receive any "benefit" not equally shared by shareholders from document production decisions.

The Complaint alleges no facts demonstrating that any of the directors were even involved with or participated in the decision.[3] Nor does it make any sense that the board would be involved in document production issues, let alone that they stood to benefit in some way. This fundamental deficiency alone dooms the Complaint's efforts to establish financial interestedness under Delaware law. *See, e.g.*, *Levine*, 855 F.Supp. at 941 (the complaint failed to allege interestedness where it did not "set out how the controlling partners actually received any profits" from the alleged scheme).

Delaware law also precludes plaintiff's remaining, conclusory attempts to allege that any board member is "interested." Courts repeatedly hold that allegations that directors receive retainers, stock option grants, and other compensation are legally insufficient to establish demand futility. *A.R. Demarco Enters., Inc. v. Ocean Spray Cranberries, Inc.*, 2002 WL 31820970, at *5 (Del. Ch. Nov. 26, 2002) ("ordinary director compensation alone is not enough to show demand futility"), *overruled on other grounds*, *Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000)); *White v. Panic*, 793 A.2d 356, 366 (Del. Ch. 2000) (directors' compensation in the form of annual retainers, fees, and stock options does not show lack of independence); *Khanna v. McMinn*, 2006 WL 1388744, at *16 (Del. Ch. May 9, 2006); *In re Limited, Inc. S'holders Litig.*,

---

[3] Even if the complaint did allege with particularity that the board approved or authorized the document production decisions, such allegations would still fail. *Brehm*, 746 A.2d at 257 n.34 (allegation that directors "approved the underlying transaction" is insufficient); *Grimes v. Donald*, 673 A.2d 1207, 1216 n.8 (Del. 1996) (demand is not excused "by attacking a transaction in which all [directors] participated"), *overruled on other grounds by Brehm*, 746 A.2d 244; *Kamen v. Kemper Fin. Servs., Inc.*, 939 F.2d 458, 461 (7th Cir. 1991) ("Delaware … has emphatically rejected the proposition that an investor may forego demand whenever the directors participated in the transaction they challenge.").

2002 WL 537692, at *4-5 (Del. Ch. March 27, 2002). Were such allegations sufficient, demand would always be excused as futile as virtually all directors are compensated. The Complaint also fails to allege any connection between the directors' compensation and the challenged decision. *See In re Gen. Motors (Hughes) S'holder Litig.*, 2005 WL 1089021, at * 8 (Del. Ch. May 4, 2005) (complaint failed to allege interestedness where it did not allege that directors' compensation was contingent on challenged transaction).

Further, while the Complaint contains several conclusory allegations that the board will neither sue itself nor vigorously prosecute an action against itself (Compl. ¶¶ 58(d), (g), (i), (k)), Delaware courts have repeatedly rejected such theories. *Aronson*, 473 A.2d at 818 (rejecting "bootstrap argument" that "demand is excused because the directors otherwise would have to sue themselves"); *Brehm*, 746 A.2d at 257 n.34; *Kohls v. Duthie*, 791 A.2d 772, 779 (Del. Ch. 2000); *Grobow v. Perot*, 526 A.2d 914, 924 (Del. Ch. 1987) (rejecting claim "that any action brought would be in hostile hands and not diligently prosecuted"). Likewise, the allegation that Allstate's Board has not so far filed a lawsuit to redress the alleged wrongful conduct also fails to show interestedness. *Blasband v. Rales*, 971 F.2d 1034, 1052 (3d Cir. 1992) ("a board's failure to take action, even if it is aware of wrongdoing, does not demonstrate futility"); *Kamen v. Kemper Fin. Servs., Inc*., 939 F.2d 458, 462 (7th Cir. 1991) ("no state treats the directors' failure to capitulate in the lawsuit as forfeiting the firm's entitlement to demand").

### 2. There Are No Particularized Facts Alleging That A Majority of The Board Lacks Independence.

Because plaintiff has not pleaded with particularity that any directors are "interested," his attempt to establish that a majority of the board lacks independence from any "interested" directors also must fail. "Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson*, 473 A.2d at 816. Directors are entitled to a presumption that they were faithful to their fiduciary duties, and thus the burden is on plaintiff to set forth particularized facts to rebut this presumption. *In re IAC/InteractiveCorp*, 478 F.Supp.2d at 598. To establish a lack of independence, plaintiffs must set forth particularized facts of a relationship that is so substantial that "the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director." *Id.* at 600. The complaint must show "that the director is 'beholden' to [any interested directors] 'or so under their influence that their discretion would be sterilized.'" *Id.* at 599 (quoting *Rales*, 634 A.2d at 936).

8

The Complaint's allegation that directors Liddy and Wilson lack independence from the non-employee directors on the compensation committee does not advance plaintiff's argument for demand futility. (Compl. ¶ 58(b)) Because the Complaint fails to allege with particularity that any of Allstate's directors are interested, it is irrelevant for purposes of demand futility whether Liddy and Wilson were "beholden" to the directors on the compensation committee. *Desimone*, 924 A.2d at 928 (the proper analysis is whether "the underlying conduct being challenged renders any of the directors 'interested' and, if so, whether any of the other directors are compromised in their ability to act independently of the interested directors"). Furthermore, the barren allegations that certain directors "controlled" others have been repeatedly rejected as insufficient to warrant demand futility. *See, e.g., Aronson*, 473 A.2d at 816 (rejecting shorthand of "dominated and controlled directors" as insufficient). Rather, "there must be coupled with the allegation of control such facts as would demonstrate that through personal or other relationships the directors are beholden to the controlling person." *Id*. at 815. No such facts are pled here.

      **B.    No Particularized Facts Are Alleged Supporting Any Potential Liability – Let Alone A Substantial Likelihood Of Liability – For Allstate's Directors.**

Having failed to allege that any of Allstate's directors are interested, plaintiff must allege particularized facts showing that a ***majority*** of the directors face a "substantial threat of personal liability as to the conduct alleged in the complaint." *Desimone*, 924 A.2d at 928; *see also Laties v. Wise*, 2005 WL 3501709, at *1 (Del. Ch. Dec. 14, 2005) ("[A] plaintiff must show that the personal liability is a substantial likelihood, and not just a mere threat."). "[T]he mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors." *Fener v. Gallagher*, 2005 WL 2234656, at *6 (quoting *Aronson*, 473 A.2d at 815). Here, too, plaintiff fails to meet this stringent standard. The allegations do not show that there is *any* potential liability for Allstate's directors, much less a substantial likelihood of liability. [4]

---

[4] As an initial matter, plaintiff's attempt to show a "substantial likelihood" of liability for the directors is made even more difficult because Allstate's Certificate of Incorporation exculpates the directors from liability for breach of fiduciary duty to the full extent of Delaware law. 8 Del. C. ¶ 102(b)(7); Ex. 2, Allstate Restated Cert. of Inc., Article Eighth. Thus, unless plaintiff pleads particularized facts going beyond a duty of care violation, the directors face no threat of personal liability. *See In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del Ch. 1995) (dismissing complaint where § 102(b)(7) exempted directors from liability and no facts were pled showing an exception); *Stone*, 911 A.2d at 367; *Laties*, 2005 WL 3501709, at *2 (dismissing complaint based on exculpatory provision).

9

A director's liability for failure to oversee the corporation (known as a "*Caremark* claim") requires showing a lack of good faith – conduct more culpable than gross negligence. *Stone v. Ritter*, 911 A.2d 362, 369 (Del. 2006). As the Delaware Supreme Court recently reiterated, "a claim that directors are subject to personal liability for employee failures is 'possibly the most difficult theory in corporation law upon which a plaintiff might hope to win judgment.'" *Id*. at 372 (quoting *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996)). In order to demonstrate directors' oversight liability, the plaintiff must show "lack of good faith as evidenced by sustained or systematic failure of a director to exercise reasonable oversight." *Caremark*, 698 A.2d at 971. There must be specific factual allegations that either "(a) the directors utterly failed to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone*, 911 A.2d at 370. "In either case, imposition of liability requires a showing that the directors ***knew*** that they were not discharging their fiduciary obligations." *Id*. (emphasis added); *see also Guttman v. Huang*, 823 A.2d 492, 506 (Del. Ch. 2003) (oversight liability is premised "on a showing that the directors were conscious of the fact that they were not doing their jobs"). Thus, "a claim will survive a motion to dismiss … only if the plaintiff presents well-pleaded facts to suggest a reasonable inference that a majority of the directors consciously disregarded their duties over an extended period of time." *David B. Shaev v. Armstrong*, 2006 WL 391931, at *1 (Del. Ch. Feb. 13, 2006), *aff'd*, 911 A.2d 802 (Del. 2006).

The difficulty in successfully pleading a failure to oversee claim was illustrated in the Delaware Supreme Court's decision in *Stone v. Ritter*. In *Stone*, the nominal defendant, AmSouth, had paid $50 million in fines and penalties to resolve government investigations into alleged violations of anti-money laundering regulations. 911 A.2d at 365. Following the payments, one of AmSouth's shareholders brought a derivative suit alleging that AmSouth's compliance program lacked adequate board and management oversight. Despite the Chancery Court's determination that "[w]ith the benefit of hindsight, it is beyond question that AmSouth's internal controls with respect to the Bank Secrecy Act and anti-money laundering regulations compliance were inadequate," the court dismissed plaintiff's claim, and the Delaware Supreme Court affirmed because the complaint lacked the requisite facts supporting bad faith. *Id.* at 371.

10

Here, plaintiff does not plead *any* facts, much less particularized facts, that, if true, would create a "substantial likelihood" that this is one of the rare cases where directors face personal liability for an oversight failure. The Complaint does not allege any facts regarding Allstate's reporting systems or controls, much less that the board "utterly failed to implement" such systems or controls. Thus, the Complaint does not rebut the law's presumption that directors "discharge their oversight responsibilities by adopting internal reporting and compliance systems that function to bring problems to the attention of senior managers and the directors themselves." *Forsythe v. ESC Fund Mgmt. Co.*, 2007 WL 2982247, at *7 (Del. Ch. Oct. 9, 2007).

Plaintiff also fails to state particularized facts that the board consciously failed to monitor the Company and "acted with a state of mind consistent with a conscious decision to breach their duty of care." *Desimone*, 924 A.2d at 935. As the court in *Desimone* described it, to potentially be personally liable for failure to oversee, directors must exhibit "indolence … so persistent that it could not be ascribed to anything other than a knowing decision not to even try to make sure the corporation's officers had developed and were implementing a prudent approach to ensuring law compliance." *Id.* Time and time again, courts applying Delaware law have dismissed complaints attempting to allege oversight failure for lack of particularized allegations.[5] Plaintiff's general allegations here can fare no better.

*First*, while the Complaint refers to a number of cases involving the McKinsey documents, it contains no particularized allegations regarding what the board knew about these cases, if anything, when they knew it, or what the board failed to do. Nor does the Complaint allege how or why the board would be involved in document production issues in policyholder cases or in the details of the document production to state regulatory agencies. Even assuming for the sake of argument that the document production practices were "wrongful," there are no particularized allegations that the board had clear notice of these practices and chose to ignore them. *See In re Baxter Int'l*, 654 A.2d at 1271 (dismissing complaint that did not "include anything specific about the alleged [wrongdoing] suggesting that the directors must have known of it"); *Shaev*, 2006 WL 391931, at *5 (dismissing complaint that did not "allege any particularized facts suggesting that the board was presented with 'red flags' alerting it to

---

[5] *See, e.g., In re Citigroup Inc. S'holders Litig.*, 2003 WL 21384599, at *2 (Del. Ch. June 5, 2003); *Guttman v. Huang*, 823 A.2d 492, 507 (Del. Ch. 2003); *Rattner v. Bidzos*, 2003 WL 22284323, at *12-14 (Del. Ch. Sept. 30, 2003); *Shaev*, 2006 WL 391931, at *1; *In Re Forest Labs, Inc. Derivative Litig.*, 450 F.Supp.2d 379, 395 (S.D.N.Y. 2006); *Sachs v. Sprague*, 401 F.Supp.2d 159, 165 (D. Mass. 2005).

potential misconduct"); *Rattner*, 2003 WL 22284323, at *13; *In re Citigroup Inc. S'holders Litig.*, 2003 WL 21384599, at *2 (Del. Ch. 2003); *Richardson v. Ulsh*, 2007 WL 2713050, at *12 (D.N.J. 2007) (under Delaware law, allegations that directors ignored red flags failed without facts suggesting "what each Director Defendant actually knew" about the alleged red flags).

Moreover, the mere fact that lawsuits and investigations were brought against Allstate involving its claims practices or the McKinsey documents does not establish that the majority of the board faces a "substantial likelihood" of personal liability. In *McSparran v. Larson*, 2007 WL 684123, at *5 (N.D. Ill. Feb. 28, 2007), a court within this District dismissed a derivative complaint for failure to adequately plead a "substantial likelihood" of personal liability. Plaintiffs attempted to meet their burden by alleging that the SEC had launched an investigation and a number of lawsuits were filed against the Company. *Id.* The Court found that such allegations of investigations and lawsuits against a large company "did not give rise to the type of extreme indifference and failure to act" to establish demand futility. The Court reasoned:

> any board of any company with multiple operating units would constantly face liability. … The claims about misconduct in the Amended Complaint simply fail to establish a systematic lack of board oversight. To allow these claims to give rise to demand futility would significantly diminish the protections of the demand requirement for all large corporations, which likely have several lawsuits and employee claims pending at any given time.

*Id.*; *see also Fener v. Gallagher*, 2005 WL 2234656, at *3, 6 (N.D. Ill. Sept. 8, 2005) (allegations that company was "subject of investigations and regulatory proceedings" in fifteen states and had been sued "in seven other lawsuits brought by private litigants" did not sufficiently allege a substantial likelihood of liability for the directors.)

*Second*, plaintiff's allegation that the decision to protect Allstate documents as trade secrets was "improper" – and that the board should have stepped in and caused different decisions to be made – amounts to nothing more than an attempt to second guess strategy decisions. Thus, even if the complaint did allege with particularity that the board was aware of these issues, the business judgment rule protects a board's decisions regarding litigation in which the company is involved. *Spiegel v. Buntrock*, 571 A.2d 767, 777 (Del. 1990) (board's decision not to pursue a derivative claim is protected by the business judgment rule); *White v. Panic*, 783 A.2d 543, 552-53 (Del. 2001) (business judgment rule protects a board's decisions to approve a settlement and not to seek contribution); *Khanna v. McMinn*, 2006 WL 1388744, at *26 (Del. Ch. 2006) (a board's decision to enter into a settlement was protected). No factual allegations

12

support a showing of conscious disregard or bad faith by the board. Further, any attempt to challenge the decisions now does not establish bad faith on the part of the board when the purported strategy decisions were made. *Wilson v. Tully*, 676 N.Y.S.2d 531, 538 (N.Y. App. Div. 1998) ("That, in hindsight … action or inaction may turn out to be controversial, unpopular, or even wrong is insufficient to excuse … demand.") (applying Delaware law).

*Third*, while the Complaint references lawsuits involving the McKinsey documents, the Complaint does not allege any final decisions adverse to Allstate. And, in fact, in some of the cases reviewing courts reversed decisions by trial courts. For instance, the Complaint alleges that Allstate refused to produce the documents without a protective order in a New Mexico case, leading "to the entry of a default judgment," yet plaintiff alleges that the decision was appealed. (Compl. ¶ 37) The New Mexico Appellate Court reversed and remanded:

> We reverse the orders of the trial court requiring unprotected disclosure of the McKinsey documents. As a result of this reversal, we remand this case to the trial court with instructions first, to vacate the default judgment entered on July 4, 2004, and second, to reevaluate Defendant's assertion of trade secret privilege as to the McKinsey documents in a manner consistent with this opinion.

*Pincheira v. Allstate Ins. Co.*, 164 P.3d 982, 999 (N.M. Ct. App. 2007), *cert. granted*, No. 30,490 (July 27, 2007). And while the Complaint states that Allstate was ordered to produce documents in Missouri and was fined in contempt, the Complaint also alleges that the decision was appealed, and there are no allegations that any of the fines have come due. (Compl. ¶ 40) In another case involving the McKinsey documents, the Indiana Appellate Court has ruled that the trial court *erred* in refusing to grant Allstate's request for a protective order, and also that Allstate's taking of a contempt order in order to immediately appeal the decision was a valid practice. *Allstate Ins. Co. v. Scroghan,* 851 N.E.2d 317, 324 (Ind. Ct. App. 2006) ("[W]e find that the trial court did abuse its discretion in denying Allstate's requests for a protective order.").

Thus, even if the Complaint sufficiently alleged that the board was aware of all of the litigation decisions involving the McKinsey documents, any allegations that such decisions were "wrongful" certainly cannot rise to the level of a sustained and systematic failure on the part of the board, especially where some courts have *agreed* that the documents should be protected. Given that a board is presumed to act in good faith absent specific particularized facts to rebut this presumption, there certainly are not facts alleged supporting "bad faith" by the board for failing to cause the Company to take any different action regarding these strategic decisions.

Finally, the claims regarding the Florida Office of Insurance Regulation also fail to establish particularized facts of a sustained and systematic failure on the part of the board. The Complaint alleges that the FOIR issued a subpoena in November 2007, and in response, Allstate produced over 27,000 pages of documents, and later produced more documents; yet, on January 17, 2008, the FOIR entered an order suspending Allstate's license to write new policies in Florida for failure to comply with the subpoena. (Compl. ¶¶ 48, 54)  Plaintiff filed this action only *one* day after the FOIR's order. The order itself was not effective immediately, and was stayed by the Florida Appellate Court pending review. Such a short timeframe precludes the showing that Allstate's board engaged in a "sustained or systematic failure of a director to exercise reasonable oversight" over Allstate's document production. *Caremark*, 698 A.2d at 971; *see also Shaev*, 2006 WL 391931, at *1 (plaintiff must present "well-pleaded facts to suggest a reasonable inference that a majority of the directors consciously disregarded their duties *over an extended period of time*." (emphasis added)).[6] Plaintiff has not sufficiently pled demand futility based on a theory of oversight liability.

### III.   TO THE EXTENT THE *ARONSON* TEST WOULD APPLY, PLAINTIFF'S ALLEGATIONS ALSO FAIL THIS STANDARD.

Even if the Court were to find that the *Aronson* test applies, plaintiff's allegations do not establish demand futility under that standard either. *Aronson*'s first prong requires the same analysis as *Rales*: the plaintiff must allege particularized facts creating a reasonable doubt that "the directors are disinterested and independent." *Aronson*, 473 A.2d at 814; *Postorivo*, 2008 WL 553205, at *7 (holding that complaint failed to allege interestedness or lack of independence under *Aronson* based on previous *Rales* analysis); *Khanna*, 2006 WL 1388744, at *16 (the same particularized allegations are required for demand excusal under *Rales* and *Aronson*'s first prong). For the reasons explained in Part II(A) above, the Complaint fails to make this showing.

Under *Aronson*'s second prong, the plaintiff must allege specific facts raising a reasonable doubt that the board action was "otherwise the product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 814. "Specifically, the 'plaintiffs must plead facts sufficient to

---

[6]   In significant contrast, the Seventh Circuit in *In re Abbott Laboratories Derivative Shareholders Litigation*, 325 F.3d 795, 809 (7th Cir. 2003), found that demand futility was sufficiently alleged with particularity where the complaint alleged facts that directors "took no steps in an effort to prevent or remedy" alleged problems with FDA compliance spanning a six year period resulting in significant fines and writedown of assets, and where the board was aware of such problems because numerous FDA warning letters were received by the Board, and senior officers participated in meetings with the FDA.

14

raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision.'" *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 824 (Del. Ch. 2005) (quoting *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 286 (Del. Ch. 2003)). Moreover, a corporation's directors are entitled to a presumption that they acted "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson*, 473 A.2d at 812. Demand will not be excused unless the challenged transaction is "so egregious on its face that board approval cannot meet the test of business judgment." *Id.* at 815.

As set forth above, the decision to seek a protective order for Allstate documents has been upheld by multiple courts. There are not sufficient allegations establishing that such a decision, even if it was made by the board, was so egregious to be outside the business judgment protection. "It is the essence of the business judgment rule that a court will not apply 20/20 hindsight to second guess a board's decision." *In re Walt Disney*, 731 A.2d 342, 362 (Del. Ch. 1998), *rev'd in part on other grounds sub nom. Brehm*, 746 A.2d 244.

## CONCLUSION

For the foregoing reasons, defendants request that the Court dismiss this action pursuant to Rule 23.1 for failure to plead with particularity that a demand on the Board would be futile.

Dated: April 25, 2008                                    Respectfully submitted,

/s/ Jonathan E. Hinkemeyer                               /s/ Peter C. John
Robert J. Kopecky                                        Peter C. John
Sallie G. Smylie, P.C.                                   Steven J. Roeder
Jonathan E. Hinkemeyer                                   WILLIAMS MONTGOMERY & JOHN LTD
KIRKLAND & ELLIS LLP                                     20 North Wacker Drive, Suite 2100
200 E. Randolph Drive                                    Chicago, Illinois 60606
Chicago, Illinois 60601                                  (312) 443-3200
(312) 861-2000

                                                         Greg A. Danilow
*Counsel for Allstate Corporation*                       Stephen A. Radin
                                                         WEIL, GOTSHAL & MANGES LLP
                                                         767 Fifth Avenue
                                                         New York, NY 10153
                                                         (212) 310-8000

                                                         *Counsel for Individual Defendants*

## CERTIFICATE OF SERVICE

       I, Jonathan E. Hinkemeyer, an attorney, hereby certify that on April 25, 2008, I electronically filed the foregoing **Memorandum in Support of Defendants' Motion to Dismiss For Failure to Adequately Plead Demand Futility** with the Clerk of Court using the CM/ECF system which sent notification of such filings to all counsel of record.

                                                               /s/ Jonathan E. Hinkemeyer