# EXHIBIT A

IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

ALLSTATE FLORIDIAN INSURANCE COMPANY; ALLSTATE INDEMNITY COMPANY; ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY; ALLSTATE INSURANCE COMPANY; ALLSTATE FLORIDIAN INDEMNITY COMPANY; ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY; ENCOMPASS INSURANCE COMPANY OF AMERICA; ENCOMPASS INDEMNITY COMPANY; ENCOMPASS FLORIDIAN INSURANCE COMPANY; and ENCOMPASS FLORIDIAN INDEMNITY COMPANY,

CASE NO. 1D08-0275

    Appellants,

v.

OFFICE OF INSURANCE REGULATION,

    Appellee.
_____/

Opinion filed May 14, 2008.

An appeal from an order of the Department of Insurance.

Elizabeth McArthur, Harry O. Thomas, and David A. Yon of Radey, Thomas, Yon & Clark, P.A., Tallahassee, for Appellants.

Susan Dawson, Deputy General Counsel, Steven H. Parton, Anoush Arakalian Brangaccio and Jim L. Bennett, Office of Insurance Regulation, Tallahassee, for Appellee.

## ON MOTION FOR REHEARING, REHEARING EN BANC, AND CERTIFICATION

HAWKES, J.

This cause is before us on Allstate's motion for rehearing, rehearing en banc, and certification. We deny the motion in its entirety. On the merits, our opinion remains unchanged. We write only to clarify our opinion. Therefore, we withdraw our previous opinion and substitute this opinion in its place.

The Allstate Companies appeal an Immediate Final Order (IFO) issued by the Department of Insurance, Office of Insurance Regulation (OIR). The IFO immediately suspended Allstate's Certificates of Authority to transact new insurance business in Florida. The suspension would terminate upon Allstate producing documents OIR previously subpoenaed in an investigation of Allstate's insurance practices. The question we must answer is whether OIR can suspend Allstate's Certificates of Authority as a consequence of Allstate's refusal to comply with its

statutory obligation to comply with OIR's investigation in order to conduct insurance business in Florida. Under the unique facts of this case, they can. We affirm.

### *The Subpoenas*

On October 16, 2007, OIR served investigative subpoenas and subpoenas duces tecum on each of the Allstate Companies. The information sought was in connection with OIR's investigation of Allstate's relationship with risk modeling companies, insurance rating organizations, trade associations and compliance with House Bill 1A. The subpoenas informed Allstate that OIR was holding a hearing on these issues in Tallahassee three months later on January 15-16, 2008.

The subpoenas duces tecum required Allstate's corporate representatives with knowledge of identified subject matter to appear and testify at the public hearing. Each subpoena and subpoena duces tecum contained a notice that "Failure to comply with this subpoena may result in the initiation of enforcement proceedings pursuant to the Florida Insurance Code."

### *The Hearing*

The hearing was held as scheduled. At the onset of the hearing, the Commission observed that, although Allstate produced "thousands of documents," it had not complied with the subpoenas. Specifically, Allstate had labeled every one of the approximately 30,000 documents it had produced as "trade secret." Some of these

3

"trade secret" documents were public records posted on OIR's website. Many of the documents had pages removed. Most of the required documents were withheld. Some of the documents subpoenaed from Allstate had been ordered produced by courts of other states, and Allstate had refused to comply. The Commission observed Allstate was currently being held in contempt of court in Missouri with a $25,000.00 per day fine for its failure to produce documents and, as of the date of the hearing, those fines exceeded $2 million.

Allstate's counsel "regret[ted]" Allstate's production had not met OIR's investigative needs, and he asserted Allstate would continue to cooperate in consultation with OIR to produce documents responsive to the subpoenas. Counsel acknowledged that marking every document "trade secret" was "an irritation," and stated that, in Allstate's "next wave" of production, it would make sure that the "trade secret" designation was raised "in only the most appropriate circumstances."

When asked if Allstate was prepared to produce "the McKinsey documents," counsel replied "subject to the appropriate protections" . . . "privileges." Counsel stated Allstate did not produce witnesses to respond to questions regarding Allstate's claims handling practices as contained in the McKinsey report or documents made by Allstate in that regard, despite being requested to do so. Instead, counsel referred the

Commission to the witnesses Allstate did provide, indicating they were "very knowledgeable."

Allstate's counsel was asked whether anyone was present to testify about communications and reasons for non-renewals from 2005 to the present, as requested by subpoena. Counsel replied "No." Counsel was asked if anyone was present to testify about the item requiring production of "documents and communications that evaluate, discuss, analyze or otherwise refer or relate in any way to your non-renewal or cancellation of policies identified in the previous response." Counsel referred the Commissioner to the witnesses present, and reiterated the topics upon which they were qualified to testify. In response, the Commission questioned whether, by Allstate selecting the witnesses and documents that would be produced, it was Allstate's intent to limit the Commission's area of inquiry. Counsel replied "These are the witnesses we have produced, yes," and the witnesses could testify about these "general topics."

The record shows Allstate produced three witnesses, none of whom produced any documents. The witnesses answered some general questions in part, but were unable to answer probing questions about the subjects required by the subpoenas. For example, the Commission attempted to question the witness produced to answer questions related to Allstate's relationship with trade associations. However, that witness testified he: had not reviewed any document responsive to that topic; had no

knowledge regarding what documents had been produced relative to that topic; did not bring documents responsive to that topic; and did not have with him documents provided to OIR relative to that topic.

Allstate's counsel represented it was not possible to produce the requested documents in the time allotted, but acknowledged Allstate did not request an extension of time. The Commission noted it was impossible to ask penetrating questions without the subpoenaed documents, and it would "happily" provide an extension of time to provide the documents if Allstate would comply with the subpoenas. However, based on counsel's representations and blanket objections, the Commission did not believe Allstate would ever produce the subpoenaed documents.

The recurring theme throughout the hearing was that OIR's requests were "breathtakingly broad," document production was incomplete, Allstate intended to provide the documents "necessary" for OIR's review subject to Allstate's objections and privileges "in a way that respects each party's interests," and the witnesses Allstate produced were unable to answer any but the most general of questions.

At the conclusion of the hearing, Senator Atwater opined Allstate decided to narrow the focus of the questions by choosing what witnesses to produce, and what was "breathtakingly broad" was Allstate's "dance" to avoid answering questions, not the questions Allstate was asked. The hearing was continued for the Commission to

"look at the array of options, which are quite limited," to take "appropriate enforcement actions."

### *The IFO*

The next day, OIR entered the IFO at issue, which detailed the subpoena requests, Allstate's 51 pages of "frivolous" objections, Allstate's failure to produce, and Allstate's representations at the hearing. The IFO discussed Allstate's failure to produce the "McKinsey Report," the significance of which was based on complaints OIR had received and information contained in J. Robert Hunter's July 18, 2007 report titled *"The 'Good Hands' Company or a Leader in Anti-Consumer Practice? Excessive Prices and Poor Claims Practices at the Allstate Corporation."*

In essence, Hunter's report, addressed in detail in the IFO, alleges Allstate used a computer program which "immediately reduce[s] the size of bodily injury claims by up to 20 percent." Any insurer who buys a license to use the program is able to calibrate the amount of "savings" it wants the program to meet. If the program does not generate "savings" to meet the insurer's goals, the insurer "adjusts" the benchmark values until the program reaches the desired result. The program is designed to systematically reduce payments to policyholders without adequately examining the validity of each individual claim.

The IFO asserted Allstate was ordered by a Missouri circuit court to produce a document similar to the "McKinsey Report." Allstate failed to produce the report, and chose instead to incur a $25,000 per day fine until the documents were produced. At the time the IFO was entered, Allstate had incurred approximately $2.4 million in court fines for failure to comply with court-ordered production.

The IFO discussed, in detail, applicable insurance code provisions, OIR's statutory obligations and available enforcement mechanisms, and the statutory requirements with which Allstate must comply to transact insurance in Florida. Specifically, the IFO referenced the following statutes:

- Section 624.307(1), Florida Statutes - Mandating OIR enforce the insurance code.

- Section 627.031(1)-(2), Florida Statutes - Stating the purpose of the insurance rating law is to "promote the public welfare" by regulating insurance rates to ensure they are not excessive, inadequate or unfairly discriminatory, and to "protect policyholders and the public against the adverse effects of excessive, inadequate, or unfairly discriminatory insurance rates . . ."

- Section 624.11(1), Florida Statutes - Providing that "*[n]o* person[1] shall transact insurance in this state . . . without complying with the applicable provisions of this code." (emphasis added).

- Section 624.15(1), Florida Statutes - Providing "*[e]ach willful violation of this code* . . . as to which a greater penalty is not provided by another provision of this code . . . or by other applicable laws of this state is a

---

[1] "Person" is defined, in part, to include "insurer." *See* § 624.04, Fla. Stat.

misdemeanor of the second degree and *is, in addition to* any prescribed applicable denial, *suspension, or revocation of certificate of authority*, . . ., *punishable as provided in s. 775.082 or s. 775.083.* Each . . . violation shall be considered a separate offense." (emphasis added).

- Section 627.031(2), Florida Statutes - Mandating that, if OIR has reason to believe any rate is excessive, inadequate or unfairly discriminatory, "*it is directed to take the necessary action*" to cause the rate to comply with Florida law.

- Section 624.317, Florida Statutes - Mandating that, if OIR has reason to believe any person has violated or is violating any provision of the code, or upon the written complaint by any interested party indicating any such violation may exist, OIR *shall* conduct such investigation of the person's accounts, documents, and transactions as OIR deems necessary.

- Section 624.318(2), Florida Statutes - Requiring that "*[e]very person being* examined or *investigated, and its* officers, *attorneys*, employees, agents, and representatives, *shall* make *freely available* to [OIR] . . . the accounts, records, documents, files, information, assets, and matters in their possession or control relating to the subject of the examination or investigation." (emphasis added).

- Section 624.321(1)(b), Florida Statutes - Granting OIR, when conducting an investigation "the power to subpoena witnesses, compel their attendance and testimony, and require by subpoena the production of books, papers, records, files, correspondence, documents, or other evidence which is relevant to the inquiry."

- Section 624.418,(2)(a)-(b), Florida Statutes - Providing as an enforcement mechanism, that "[OIR] *may, in its discretion, suspend or revoke the certificate of authority* of an insurer *if it finds that the insurer*: (a) Has violated . . . any provision of this code. (b) *Has refused to be examined or to produce its accounts, records, and files for examination, or if any of its officers have refused to give information with respect to its affairs or to perform any other legal obligation as to such examination, when required by [OIR].*" (emphasis added).

The IFO asserted that, without full and complete information, OIR was unable to protect the public by documenting Allstate's claims handling procedures; improper claims handling practices harm Allstate's Florida customers and are a continuing violation of Florida's Unfair Insurance Trade Practices Act; and Allstate's failure to produce documents violated the insurance code and constituted a willful, ongoing crime pursuant to section 624.15(1), Fla. Stat. The IFO found Allstate's continuing failure to provide lawfully requested documents, and its continuous criminal violations of Florida law constituted an immediate danger to the public.

Finally, the IFO asserted, in essence, that based on Allstate's representations at the hearing it would not respond in good faith to OIR's subpoena, but would instead continue its extensive, "frivolous" objections. Allstate's representations, coupled with its choice to incur millions of dollars in fines rather than comply with a Missouri circuit court order requiring production of similar documents, led OIR to conclude the better enforcement option was to issue the IFO instead of pursuing the apparently futile course of seeking enforcement of its subpoenas in circuit court.

### *IFO Requirements*

An IFO must contain facts sufficient to demonstrate: (1) Immediate, serious danger to the public health, safety, or welfare; (2) The order takes only that action necessary to protect the public considering the emergency (i.e., the remedy is tailored

to the harm); and, (3) Procedural fairness under the circumstances (the procedure provides at least the same procedural protection given by other statutes, or the state or federal Constitutions). *See* § 120.60(6), Fla. Stat. (2007); *Bio-Med Plus, Inc. v. Dep't of Health*, 915 So. 2d 669 (Fla. 1st DCA 2005); *Premier Travel Int'l v. Dep't of Agric. & Cons. Servs.*, 849 So. 2d 1132 (Fla. 1st DCA 2003). These elements, which are necessary to an IFO's validity, must appear on its face. *See e.g., Bio-Med Plus,* 915 So.2d at 669; *Commercial Consultants Corp. v. Dep't of Bus. Reg., Div. of Land Sales & Condo.*, 363 So. 2d 1162, 1164 (Fla. 1st DCA 1978).

### IFO Compliance

Allstate's willful failure to comply with its statutory disclosure requirements made it extremely difficult, if not impossible, for OIR to provide the degree of specificity this court may ordinarily require for an IFO. Essentially, Allstate created the difficulty about which they now complain and attempt to use to seek relief. Consequently, we require a somewhat lesser demonstration of specificity here than what the court may ordinarily find necessary. Applying this relaxed standard, our review of the IFO reveals OIR met each requirement, and every element necessary to the IFO's validity appears on its face.

11

## Immediate Danger to Public Health, Safety or Welfare

The IFO provided facts sufficient to demonstrate an immediate danger to the public health, safety or welfare. Two allegations in the IFO satisfy this element.

First, it alleged monetary loss to policy holders and beneficiaries. OIR received complaints regarding Allstate's claims handling practices, and information indicating Allstate's claims handling practices arbitrarily reduced bodily injury claim payments to its policyholders and beneficiaries by up to 20%. This allegation of widespread personal monetary loss is sufficient to meet the danger requirement of section 120.60, Florida Statutes. *See Premier Travel*, 849 So. 2d at 1134 (holding personal monetary losses can be the type of danger to the public health, safety or welfare addressed by section 120.60); *Stock v. Dep't of Banking & Finance*, 584 So. 2d 112 (Fla. 5th DCA 1991); *Saviak v. Gunter*, 375 So. 2d 1080 (Fla. 1st DCA 1979).

Second, the IFO alleged ongoing criminal activity. The Legislature made failure to cooperate with an OIR investigation a crime. *See* § 624.15(1), Fla. Stat. Allstate's criminal conduct prevented OIR from protecting the public by fully investigating the complaints and information it had received.

When the Legislature enacts penal statutes, it does so under the State's police power, which is limited to protection of the public's health, safety and welfare. *See e.g., In re Forfeiture of 1969 Piper Navajo, Model PA-31-310, S/N-31-395, U.S.*

*Registration N-1717G*, 592 So. 2d 233 (Fla. 1992); *State v. Saiez*, 489 So. 2d 1125 (Fla. 1986); *Hamilton v. State*, 366 So. 2d 8 (Fla. 1978); *Carroll v. State*, 361 So. 2d 144 (Fla. 1978). Thus, the IFO assertion that Allstate's failure to comply with the subpoenas, each offense of which constitutes a separate criminal violation, poses a danger to the public health, safety or welfare, has merit. Ongoing criminal violations constitute a danger to the public health, safety and welfare.

### Remedy Tailored to Address Harm

In at least three ways, the IFO showed the immediate suspension of Allstate's certificate of authority to transact new insurance in Florida until it complied with the subpoenas was narrowly tailored to address the harm.

First, the IFO was limited in scope. Pursuant to statute, OIR could have suspended Allstate from conducting *any* insurance business in Florida for its failure to comply with the insurance code by its refusal to produce the documents, and to make the documents requested by OIR "freely available." *See* § 624.11(1), Fla. Stat.; § 624.318(2), Fla. Stat.; § 624.418(2)(a)-(b), Fla. Stat. In limiting the scope to suspension of new business, OIR's action mitigates the potential harm from Allstate's alleged insurance practices while still allowing Allstate to service existing policies.

Second, the IFO was tailored to address Allstate's continued obstruction of OIR's investigation. For instance, the IFO alleged and the record showed Allstate

marked approximately 30,000 documents, including public records, "trade secret" and objected to *every* document requested, asserting, in part, that the requested documents were irrelevant, burdensome to produce, vague, overbroad, etc. OIR found the 30,000 pages of documents produced "non-responsive" and the 51 pages of objections "frivolous." Although Allstate complained of the extensiveness of the request, it never requested an extension of time to produce the documents, and gave extremely ambiguous caveats as to the extent to which they would ever produce the documents. The witnesses Allstate produced in response to the subpoenas duces tecum were unable to address in meaningful detail any of the subjects set forth in the subpoenas. Competent, substantial evidence from the hearing supports OIR's conclusion that additional time, further negotiations or utilizing the circuit court option to enforce the subpoenas would have been futile in assisting OIR to obtain the required documents from Allstate. Allstate's responses at the hearing support OIR's concern that Allstate, through obstruction and delay, hoped to define the scope of OIR's investigation. Clearly, Allstate lacks this authority.

    Third, the IFO was tailored to the harm by allowing Allstate to determine the duration of the suspension. OIR exercised its discretion to temporarily suspend Allstate's certificates of authority to transact new business for failing to produce the requested records. *See* § 624.418(2)(b), Fla. Stat. Allstate may lift the suspension at

any time by simply producing the documents it is required by statute to "freely" produce in order to conduct insurance business in Florida. OIR places no extra burden on Allstate than the one Allstate voluntarily accepted when choosing to transact insurance in Florida. *See* § 624.11(1), Fla. Stat.; § 624.318(2), Fla. Stat.; § 624.418(2)(a)-(b), Fla. Stat.

Allstate argues OIR's decision to issue the IFO instead of seeking to enforce its subpoenas in circuit court prevents Allstate from obtaining judicial review to determine the reasonableness of the subpoenas, and requires Allstate to waive its right to withhold documents protected by attorney-client privilege. We reject this argument. Nothing prevented *Allstate* from *timely* filing a privilege log and seeking a protective order in circuit court, specifically identifying any of the requested documents they believed were privileged.

### Procedural Fairness

Courts must consider the facts of the particular case to determine whether the parties have been accorded the procedural due process state and federal constitutions demand. *See Hadley v. Dep't of Admin.*, 411 So. 2d 184, 187 (Fla. 1982) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)). Formalities requisite in judicial proceedings are not necessary to meet due process requirements in the administrative process. *See id.* It is sufficient if the accused is informed of the charges against him,

has reasonable opportunity to defend against attempted proof of such charges, and the proceedings are conducted in a fair and impartial manner. *See id.*

Additionally, in determining whether to affirm or reverse an IFO, courts consider whether the pattern of conduct is likely to continue. *See Premier Travel Int'l,* 849 So. 2d at 1135; *Saviak,* 375 So. 2d at 1080; *Stock,* 584 So. 2d at 115.

Here, OIR provided procedural fairness and entry of the IFO was fair under the circumstances. OIR issued subpoenas and subpoenas duces tecum, and scheduled a hearing. Allstate never requested an extension of time. The hearing was held. Allstate appeared at the hearing without the requested documents, and without the required witnesses. At the hearing, Allstate frustrated the Commission's efforts to conduct the required investigation. Although Allstate claims it intended eventual compliance with the subpoenas, it did so in such ambiguous terms and with such extensive caveats as to render these assertions meaningless. The record supports the IFO allegation that Allstate's conduct is likely to continue, based on its representations at the hearing, and its history of choosing to incur millions of dollars in fines rather than comply with court-ordered production.

OIR's decision to forgo futile attempts to enforce its subpoenas in circuit court, issue the IFO to temporarily suspend Allstate's ability to transact new insurance business, and provide for a formal administrative hearing to determine whether the

suspension should be permanent, met the statutory "procedural fairness under the circumstances" requirement.

### *Conclusion*

The facts of this case are unique. In order to conduct insurance business in Florida, Allstate is statutorily required to comply with OIR's investigation and make "freely available" documents sought by OIR. Allstate's willful, indeed potentially criminal, failure to comply with its disclosure obligations has prevented OIR from adequately investigating its reasoned belief that Allstate is systematically defrauding its policyholders. To the extent Allstate believed any documents OIR sought were privileged, *Allstate* was required to *timely* seek a protective order in circuit court.

In attempting to conduct its investigation, OIR was faced with Allstate's representations that it would decide which documents it would produce, and Allstate's history of incurring millions of dollars in court-ordered fines rather than comply with court-ordered production. The scope of OIR's investigation cannot be limited by Allstate's unilateral actions. Suspension of Allstate's Certificates of Authority was one of OIR's statutorily available options when Allstate refused to cooperate in the investigation. Because the IFO meets the requirements of section 120.60(6), Florida Statutes, it is AFFIRMED and the stay is lifted.

BROWNING, C.J., and LEWIS, J., CONCUR.