IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAUL FOJAS, Derivatively on Behalf of ALLSTATE CORP., <br><br>   Plaintiff, <br>   v. <br><br> F. DUANE ACKERMAN, JAMES G. ANDRESS, ROBERT D. BEYER, W. JAMES FARRELL, JACK M. GREENBERG, RONALD T. LEMAY, EDWARD M. LIDDY, J. CHRISTOPHER REYES, H. JOHN RILEY, JR., JOSHUA I. SMITH, JUDITH A. SPRIESER, MARY ALICE TAYLOR, THOMAS J. WILSON, <br><br>   Defendants, <br>   - and - <br> ALLSTATE CORP., a Delaware corporation, <br><br>   Nominal Defendant. | No. 1:08 CV 00423 <br><br> Judge William T. Hart |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO ADEQUATELY PLEAD DEMAND FUTILITY

Robert J. Kopecky
Sallie G. Smylie, P.C.
Jonathan E. Hinkemeyer
KIRKLAND & ELLIS LLP
200 E. Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*Counsel for Allstate Corporation*

Peter C. John
Steven J. Roeder
WILLIAMS MONTGOMERY & JOHN LTD
20 North Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 443-3200

-and-

Greg A. Danilow
Stephen A. Radin
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

May 22, 2008                                     *Counsel for Individual Defendants*

## INTRODUCTION

In challenging defendants' argument that plaintiff has not pled particularized facts that demand on the Allstate Board of Directors should be excused as futile, plaintiff states that "it defies common sense" to have to make a demand on the board because the board would not want to "sue themselves." (Pl. Response at 2) But plaintiff's theme – that the board somehow lacks independence because they would not want to "sue themselves" – has been repeatedly rejected by courts applying Delaware law. To the contrary, demand is not excused by simply suing all of the directors of a company, or by arguing that a board would not want to sue itself. *Brehm v. Eisner*, 746 A.2d 244, 257 n.34 (Del. 2000); *Aronson v. Lewis*, 473 A.2d 805, 818 (Del. 1984) (rejecting "bootstrap argument" that "demand is excused because the directors otherwise would have to sue themselves"); *In re Forest Labs., Inc. Derivative Litig.,* 450 F. Supp. 2d 379, 388 n.10 (S.D.N.Y. 2006) ("Delaware courts have roundly rejected the proposition that reasonable doubt as to interestedness is established simply by positing that the directors would have to sue themselves"). "To hold otherwise would permit plaintiffs to subvert the particularity requirements of Rule 23.1 simply by designating all the directors as targets." *Grimes v. Donald*, 673 A.2d 1207, 1216 n.8 (Del. 1996).

Plaintiff has not established a plausible basis for any liability for breach of fiduciary duty by Allstate's directors, much less the substantial likelihood of liability required to excuse demand. An oversight claim against directors is "'possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.'" *Stone v. Ritter*, 911 A.2d 362, 372 (Del. 2006) (*quoting In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996)). A plaintiff must show "a sustained or systematic failure of the board to exercise oversight" and that "the directors knew they were not discharging their fiduciary responsibilities." *Id*. at 370, 372.

Here, plaintiff has shown nothing of the sort. Plaintiff complains about decisions concerning discovery and the confidentiality of documents containing trade secrets made by Allstate and its outside counsel in the course of ongoing civil and administrative proceedings in Missouri, New Mexico, Florida, and other states, and seeks to hold Allstate's directors – the overwhelming majority of whom are outside, non-management, non-employee directors – responsible for these decisions. In a large company like Allstate, document production and discovery matters are obviously not decisions made by directors, or over which directors

ordinarily would be expected to exercise supervisory authority.  At most, plaintiff has alleged a litigation strategy designed to protect internal corporate documents from disclosure to competitors that had mixed results.  Plaintiff has not alleged any factual basis for the Court to conclude that Allstate's directors were obligated to overrule this strategy, or to second-guess the corporation's litigation decisions and the decisions of those court's upholding Allstate's positions.

Plaintiff's race to the courthouse, filing this lawsuit only *one day* after the Florida Office of Insurance Regulation's (FOIR) January 17, 2008 Order, shows precisely why the demand requirement is important in corporate governance.  The demand requirement allows a company and its directors the opportunity to address and resolve ongoing issues without having to face lawsuits at every turn.  While the question whether demand is futile must be viewed at the time the Complaint was filed (*see* cases cited below), even the subsequent history of the FOIR dispute does not help plaintiff's cause.  Plaintiff tries to make much of the fact that the Florida Appellate Court on May 14, 2008 upheld the FOIR's authority to suspend Allstate's business, but less than two days later, on May 16, 2008, the FOIR *stayed* the suspension, finding that the "Office's current review of Allstate's document production indicates that Allstate appears to have provided those documents requested" and "inasmuch as Allstate now appears to be in compliance with the statute … the suspensions … are hereby stayed." (Ex. A, 5/16/2008 FOIR Order)  Because the FOIR's January 17, 2008 Order was stayed almost immediately after it was issued pending judicial review, the suspension underlying this case was in effect for less than two days.  Thus, despite plaintiff's claim that Allstate was barred from writing new business in Florida and faces "disastrous" financial consequences, nothing of the kind occurred.

## ARGUMENT

While plaintiff agrees that Delaware law requires pleading facts with particularity to support the reasons why demand would be futile (Pl. Resp. at 4), plaintiff repeatedly tries to dilute the "particular facts" standard by arguing that the Complaint should be "liberally construed" and that the Court should deny a motion to dismiss if "reasonable doubt" exists as to the board's independence.  (*See* Pl. Resp. at 4-5, 7)  But trying to water down the standard cannot turn plaintiff's conclusory allegations into particularized facts.

First, while well-pleaded allegations must be accepted as true on a motion to dismiss, "conclusionary allegations of fact or law not supported by allegations of specific fact may not be

taken as true" and "a trial court need not blindly accept as true all allegations, nor must it draw all inferences from them in plaintiffs' favor unless they are reasonable inferences." *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988). "'Conclusory allegations are not considered as expressly pleaded facts or factual inferences,'" "inferences that are not objectively reasonable cannot be drawn in the plaintiff's favor," and a "complaint larded with conclusory language … does not comply with these fundamental pleading mandates." *Beam v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004) (quoting *White v. Panic,* 783 A.2d 543, 549 (Del. 2001)).

Second, the allegations must be considered in light of Delaware law, where "*stringent requirements of factual particularity*" govern complaints alleging that demand is excused. *Stone*, 911 A.2d at 367 n.9 (emphasis added). Federal Rule of Civil Procedure 23.1 reinforces Delaware's pleading requirements. Fed. R. Civ. P. 23.1(b) (plaintiffs in derivative actions must "state with particularity … the reasons" for not making a demand). "Vague or conclusory allegations do not suffice" to excuse demand. *Postorivo v. AG Paintball Holdings, Inc.*, 2008 WL 553205, at *4 (Del. Ch. Feb. 29, 2008); *see also Desimone v. Barrows*, 924 A.2d 908, 928 (Del. Ch. 2007) (court "do[es] not accept cursory contentions of wrongdoing as a substitute for the pleading of particularized facts"). Thus, Delaware's heightened pleading standard "does not permit a stockholder to cause the corporation to expend money and resources in discovery and trial in the stockholder's quixotic pursuit of a purported corporate claim based solely on conclusions, opinions or speculation." *Brehm*, 746 A.2d at 255.

Third, plaintiff misconstrues the notion of "reasonable doubt." Delaware's requirement that allegations need to create a "reasonable doubt" in order to excuse demand does not, as plaintiff suggests, diminish the strict pleading standard. Plaintiff must still "'comply with stringent requirements of factual particularity' … to create a reason to doubt that a majority of the board is disinterested or independent or that the board's action was a valid exercise of business judgment." *Ryan v. Gifford*, 918 A.2d 341, 352 n.23 (Del. Ch. 2007). Plaintiff's alleged "reason to doubt" cannot be "based on mere suspicions or stated solely in conclusory terms." *Grimes v. Donald*, 673 A.2d 1207, 1217 (Del. 1996); *see also Postorivo*, 2008 WL 553205, at *7 (finding "no reason to doubt" the board's independence or disinterestedness where the complaint contained "only vague accusations and restatements of the demand futility standards"). "Creating such a reason to doubt is a difficult feat under Delaware law." *Ryan*, 918 A.2d at 352 n.23.

3

Under the Delaware Supreme Court's analysis in *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993), which governs plaintiff's allegations here, plaintiff has not alleged particularized facts showing that the board lacks independence or faces a substantial likelihood of liability. And plaintiff's claim also fails to satisfy the standard set forth in *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), because plaintiff has not alleged with particularity any board actions outside the protection of the business judgment rule.

I.  **PLAINTIFF'S ALLEGATIONS DO NOT ESTABLISH DEMAND FUTILITY UNDER THE APPLICABLE *RALES* TEST.**

Plaintiff fails to allege with particularity any actual board action or decision regarding litigation strategy and discovery issues. As explained in defendants' opening brief, *Aronson* applies where a board takes a particular action that is challenged, and *Rales* applies where a plaintiff challenges conduct that does not involve a board action, such as alleged failure to properly oversee the company. *Postorivo*, 2008 WL 553205, at *5. Both the relevant case law, and the allegations in the Complaint, show that this case should be analyzed under *Rales*.

Nowhere in the Complaint does plaintiff plead facts supporting the "the who, what, when, where and how" of any actions that the board purportedly took. *McSparran v. Larson*, 2007 WL 684123, at *3 (N.D. Ill. Feb. 28, 2007). The allegations here are not like those in cases cited in plaintiff's response brief, where a particular board decision was challenged. In *Grobow v. Perot*, 539 A.2d 180 (Del. 1988), for instance, plaintiff challenged the decision by General Motor's board to buyout shareholder Ross Perot. Particular facts were stated in the complaint, such as dates of meetings discussing the proposed buyout and when the board approved the buyout decision. *Id.* at 184. Similarly, in *Ash v. McCall,* 2000 WL 1370341, at *6-7 (Del. Ch. Sept. 15, 2000), the court applied *Aronson* where the plaintiff challenged a decision by the board to merge with another company. Notably, where the plaintiff also separately challenged the board's failure to detect and cure accounting irregularities, the court used a *Rales* analysis for those claims, as they raised oversight issues. *Id.* at *10.

Here, there are no facts supporting any decision by the Allstate board that plaintiff now seeks to challenge. Plaintiff does not allege with particularity that the board made a decision on what litigation strategy to use regarding protection of confidential company documents or that the board decided how to respond to the FOIR subpoena. While plaintiff tries to argue he has alleged a decision because he claims that the board "adopted or approved a scheme" or "actively, knowingly, and consciously" made decisions to conceal documents (*see* Pl. Resp. at 8, 9), the

4

case law consistently holds that using such conclusory buzzwords with no factual support is not enough to show that a board took an action. Instead, such claims should be analyzed under a *Rales* "oversight" analysis. (*See* cases cited in defendants' opening brief at 5-6)

Thus, *Rales* supplies the appropriate analysis here – and as explained in defendants' opening brief and further below, plaintiff's Complaint falls short.

### A. Plaintiff Does Not Allege Particularized Facts Supporting A "Substantial Likelihood" Of Liability For Allstate's Directors.

Plaintiff claims that Allstate's directors lack disinterestedness and independence because they "face[] a substantial likelihood of liability." (Pl. Resp. at 12) "Since a plaintiff must plead with particularity reasons why demand should be excused, when a reason presented is that directors are disabled by the risk of personal liability from a certain claim against those directors, such claim must also be pled with particularity." *Laties v. Wise*, 2005 WL 3501709, at *1 (Del. Ch. Dec. 14, 2005). No such particularized facts are pled here. To the contrary, pleading facts to support the required "substantial likelihood" of director liability is difficult, and the requirement is satisfied only in "rare cases" where the challenged director conduct is "egregious on its face." *Aronson*, 473 A.2d at 815; *see also In re Xethanol Corp. Derivative Litig.*, 2007 WL 2331975, at *4 (S.D.N.Y. Aug. 14, 2007) ("only in rare circumstances where the failure to act is so egregious that the directors face 'a substantial likelihood of liability' will directors … have a sufficiently disqualifying interest as to negate the demand requirement"); *Seminaris v. Landa*, 662 A.2d 1350, 1355 (Del. Ch. 1995) ("[t]he particularized facts of the complaint do not describe such egregious conduct by the directors that they face a substantial likelihood of liability").

Under *Stone v. Ritter*, 911 A.2d 362 (Del. 2006), and *In re Caremark*, 698 A.2d 959 (Del. Ch. 1996), director oversight failure cases require either that (1) "the directors utterly failed to implement any reporting or information system or controls" or (2) the directors, "having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone*, 911 A.2d at 370. "In either case, imposition of liability requires a showing that the directors *knew* that they were not discharging their fiduciary obligations." *Id.* (emphasis added). "Only a sustained or systematic failure of the board to exercise oversight – such as an utter failure to assure a reasonable information or reporting system exists – will establish the lack of good faith that is a necessary condition to liability." *Id.* at 372 (quoting *Caremark*, 698 A.2d at 971); *see also Teachers' Ret. Sys. v. Aidinoff*, 900 A.2d 654, 668 (Del. Ch. 2006) (plaintiff must

5

demonstrate "conscious torpor in the face of duty'" and that "the directors' level of indolence was so extreme that it arose to a conscious decision to take the salary of a director while intentionally failing to discharge one's fiduciary obligations.")

The cases confirm how difficult this standard is to meet. In the past few years alone, Delaware courts have routinely and repeatedly granted motions to dismiss cases involving oversight claims against directors for failure to allege facts supporting demand futility. *See, e.g.*, *In re Citigroup Inc. S'holders Litig.*, 2003 WL 21384599, at *1 (Del. Ch. June 5, 2003), *aff'd mem.*, 839 A.2d 666 (Del. 2003); *Guttman v. Huang*, 823 A.2d 492, 493 (Del. Ch. 2003); *Rattner v. Bidzos*, 2003 WL 22284323, at *1 (Del. Ch. Sept. 30, 2003); *Shaev v. Armstrong*, 2006 WL 391931, at *1 (Del. Ch. Feb. 13, 2006), *aff'd mem.*, 911 A.2d 802 (Del. 2006); *Stone v. Ritter*, 911 A.2d 362, 365 (Del. 2006). Time after time, federal courts construing Delaware law have reached the same conclusion.[1] These cases demonstrate that an oversight claim against directors is "'possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.'" *Stone*, 911 A.2d at 372.

Consistent with this authority, plaintiff's claims here fail as well. Nowhere in the Complaint does plaintiff allege facts showing "a sustained or systematic failure of the board to exercise oversight" of decisions regarding litigation – or, for that matter, discovery determinations in litigation. No facts are alleged suggesting any reason why Allstate's directors should have questioned the company's handling of litigation, including the company's reliance on outside counsel. In fact, there are no allegations of insufficient controls whatsoever. Instead, plaintiff attempts to meet the burden of showing that the Allstate directors failed in their oversight duties by arguing, in completely conclusory terms, that Allstate's directors were blind to "red flags" that "subject[ed] the Company to significant fines, potential criminal liability and loss of Allstate's ability to write new insurance in the state of Florida." (Pl. Resp. at 13)

---

[1] *See, e.g.*, cases cited in defendants' opening brief at 11-12 and n.5; *see also Staehr v. Alm,* 2008 WL 657865 (11th Cir. Mar. 13, 2008); *In re Morgan Stanley Derivative Litig.*, -- F.Supp.2d --, 2008 WL 820718 (S.D.N.Y. Mar. 27, 2008); *Ferre v. McGrath*, 2007 WL 1180650 (S.D.N.Y. Feb 16, 2007); *In re IAC/InterActiveCorp Securities Litig.*, 478 F.Supp.2d 574 (S.D.N.Y. 2007); *In re Federal Nat. Mortg. Ass'n Sec., Derivative, ERISA Litig.*, 503 F.Supp.2d 9 (D.D.C. 2007); *Loveman v. Lauder*, 484 F.Supp.2d 259 (S.D.N.Y. 2007); *Jones v. Jenkins*, 503 F.Supp.2d 1325 (D.Ariz. 2007); *Kenney v. Koenig*, 426 F.Supp.2d 1175 (D.Colo. 2006); *Irwin v. Gemunder*, 2006 WL 3366180 (E.D.Ky. Nov 20, 2006); *In re First Bancorp Derivative Litig.*, 465 F.Supp.2d 112 (D.P.R. 2006); *Halpert Enterprises, Inc. v. Harrison*, 2005 WL 1773686 (S.D.N.Y. Jul 26, 2005).

Plaintiff identifies no facts showing "red flags," in either his Complaint or response brief. Plaintiff simply lists selected litigation and regulatory proceedings but does not establish that the directors' alleged failure to supervise those matters was "so extreme that it arose to a conscious decision to take the salary of a director while intentionally failing to discharge one's fiduciary obligations." *Teachers' Ret. Sys.*, 900 A.2d at 668. The fact that litigation or regulatory proceedings were brought against Allstate – and that the proceedings involved discovery disputes over the confidentiality of internal documents – does not show that the directors face a "substantial likelihood of personal liability." Both *McSparran v. Larson*, 2007 WL 684123, at *5 (N.D. Ill. Feb. 28, 2007) and *Fener v. Gallagher*, 2005 WL 2234656, at *3, 6 (N.D. Ill. Sept. 8, 2005), have held, under Delaware law, that even allegations of repeated lawsuits or investigations against a company do not "[give] rise to the type of extreme indifference and failure to act" to establish demand futility. *McSparran*, 2007 WL 684123, at *5 ("To allow these claims to give rise to demand futility would significantly diminish the protections of the demand requirement for all large corporations, which likely have several lawsuits and employee claims pending at any given time); *Fener*, 2005 WL 2234656, at *3, 6 (allegations that company was "subject of investigations and regulatory proceedings" in fifteen states and was sued "in seven other lawsuits" did not allege a substantial likelihood of liability.).[2]

Here, plaintiff claims that the board should be on notice of "red flags" of a purportedly improper discovery position in litigation proceedings based on a handful of lawsuits and regulatory proceedings brought against a large company in a regulated industry. But there are no particularized facts supporting why discovery matters in litigation, or subpoenas in administrative proceedings, would or should come to the attention of the board and cause the board to take action. The allegations in the Complaint do not demonstrate intentional blindness

---

[2] Nor has plaintiff cited any cases where a board faced a "substantial likelihood of liability" for failure to oversee discovery matters. In that regard, *In re Morgan Stanley Derivative Litigation*, 2008 WL 820718 (S.D.N.Y. Mar. 27, 2008), is relevant. There, a shareholder sued Morgan Stanley's board, alleging breaches of fiduciary duty relating to "civil fines and penalties for continuously flaunting federal law requiring emails to be retained." *Id.* at *6. Plaintiff alleged that Morgan Stanley improperly failed to retain emails, resulting in an $8.25 million fine by the SEC, and a subsequent SEC investigation for continued noncompliance. *Id.* at *1. Plaintiff also alleged that a $1.5 billion judgment was entered against Morgan Stanley (although later reversed), allegedly resulting from improper handling of electronic discovery matters. *Id.* at *2. The court found that these allegations did not create any reasonable doubt as to the directors' independence or interestedness, and dismissed the complaint for failure to make a demand.

7

to "red flags" establishing conduct "so extreme that it arose to a conscious decision to take the salary of a director while intentionally failing to discharge one's fiduciary obligations." *Teachers' Ret. Sys.*, 900 A.2d at 668.

**Litigation Proceedings.** While plaintiff attempts to argue that discovery disputes are "red flags" of an improper litigation strategy, none of the Complaint's allegations show why such disputes would have put the board on notice of improper activities, or that Allstate's directors had reason to believe that Allstate's management – and counsel – were not handling these cases in an appropriate manner. At most, the allegations show that the Company's attempt to protect its internal documents by only producing certain documents under a protective order was successful before some courts, and unsuccessful (but appealed) in other courts. But the allegations do not establish an egregious position that would warrant finding that the board of directors face a substantial likelihood of liability for positions taken by Allstate in connection with litigation.

The Complaint in fact does not allege any final adverse decisions rendered against Allstate on discovery issues. In some cases, like the *Hager v. Allstate* litigation in Kentucky (Compl. ¶¶ 36, 38), the trial court determined that the documents were not trade secrets but ultimately "the parties agreed to treat the documents confidential" to keep the litigation moving. (*Id.* ¶ 38) In other cases, like the New Mexico litigation, the trial court's determination against Allstate was appealed (*Id*. ¶ 37), and, notably, plaintiff's Complaint and response brief fail to mention that the New Mexico Appellate Court reversed and remanded the trial court's determination that the documents were not trade secrets, finding that the trial court used an improper analysis. *Pincheira v. Allstate Ins. Co.*, 164 P.3d 982, 999 (N.M. Ct. App. 2007) ("We reverse the orders of the trial court requiring unprotected disclosure of the McKinsey documents."), *cert. granted*, 165 P.3d 317 (N.M. July 27, 2007) (No. 30,490). Even with respect to the *Dale Deer v. Allstate Ins. Co.* case, where plaintiff claims that fines were ordered against Allstate, the Complaint does not allege that the fines ever came due; rather, plaintiff alleges that Allstate appealed the decision. (Compl. ¶ 40)

Plaintiff's response brief also ignores entirely the Indiana Court of Appeals decision holding that the trial court "abuse[d] its discretion in denying Allstate's requests for a protective order" and finding that Allstate's decision to refuse to produce the documents in order to appeal the protective order issue was a legitimate strategy for challenging an erroneous trial court

8

discovery ruling. *Allstate Ins. Co. v. Scroghan,* 851 N.E.2d 317, 322, 324 (Ind. Ct. App. 2006). In short, even if Allstate faced adverse decisions in some cases, it cannot be said that the litigation strategy to attempt to protect documents with protective orders was wrongful, or that certain preliminary adverse court decisions were "red flags" that show that the board intentionally abandoned their responsibilities subjecting them to liability.

**Regulatory Proceedings**. The two state proceedings in Louisiana and Florida referenced in the Complaint similarly do not establish that the directors face a substantial likelihood of liability for a claim requiring a "sustained or systematic failure of the board to exercise oversight." As in many industries, insurance companies face state rate-setting proceedings, and the directors of such companies do not face automatic liability when a state opens a proceeding or files a lawsuit. The Louisiana Attorney General action referred to in the Complaint is not even alleged to have anything to do with the McKinsey documents at issue in the other litigation proceedings. Rather, plaintiff alleges that "Allstate and other insurers" were sued after the events of Hurricane Katrina and Rita. (Compl. ¶ 42) The fact that Allstate was sued in Louisiana after such events cannot possibly be viewed as a "red flag" regarding the Company's supposedly improper strategy concerning confidential treatment of its documents or evidence that the directors abdicated their fiduciary duties.

Plaintiff spends a lot of time discussing the FOIR's January 17, 2008 Order and subsequent events. But the question whether demand is excused needs to be assessed *at the time* the Complaint was filed. Subsequent events are irrelevant to the question before the Court as a matter of law. *Aronson*, 473 A.2d at 810 ("futility is gauged by the circumstances existing at the commencement of a derivative suit"); *see also Fink v. Komansky*, 2004 WL 2813166, at *3 (S.D.N.Y. Dec. 8, 2004) (under Delaware law, "the futility of making a demand is determined on the basis of existing facts alleged at the time the suit is filed"). This makes sense. Post-complaint events not existing at the time shareholders seek to wrest control of a claim away from a corporation's board of directors cannot provide the basis for the evaluation concerning director disinterestedness and independence that plaintiffs must make *at the time* they seek to seize the claim. *See Braddock v. Zimmerman,* 906 A.2d 776, 785 (Del. 2006) ("Rule 23.1 was designed to ensure that through derivative suits 'shareholders do not improperly seize corporate powers'").

Plaintiff filed his Complaint on January 18, 2008, only one day after the FOIR's Order. The Complaint alleges that Allstate received a subpoena in October 2007 (Compl. ¶ 43), and

9

only a few months later, the FOIR found that Allstate did not fully comply with the subpoena and suspended their ability to write new business. (*Id.* ¶ 54) The Complaint itself alleges that "this is the first time FOIR has suspended a company for failure to provide documents." (*Id.* ¶ 53) Given the short timeframe, and the fact that the FOIR had never before taken such action, there is nothing to suggest that the subpoena from the FOIR should have been a "red flag" of any egregiously improper conduct requiring board intervention or the basis upon which one could find "a sustained or systematic failure of the board to exercise oversight."

Even if the post-Complaint events were relevant to the demand issue, those events do not bolster plaintiff's argument. Plaintiff repeatedly cites the May 14, 2008 decision of the Florida Appellate Court affirming the FOIR's authority to suspend Allstate's business. Yet within two days of that decision, the FOIR entered a new Order, to which this Court may take judicial notice, finding that "Allstate has now produced more than 825,000 pages of documents" and the "[FOIR] Office's current review of Allstate's document production indicates that Allstate appears to have provided those documents requested by the Office." (Ex A, 5/16/2008 FOIR Order, at ¶¶ 6, 8) As a result, the FOIR stayed the suspension, allowing Allstate to continue to write new business in Florida. (*Id.* at p. 3-4) There is thus no factual support for plaintiff's conclusion (Pl. Resp. at 1) that "billions of dollars in business" was or will be lost. Indeed, because the original January 17 Order was almost immediately stayed by the Florida Appellate Court pending review (*see* Ex. A, 5/16/2008 FOIR Order ¶ 5 ("The First District Court of Appeal … stayed the suspensions of the Allstate Companies on January 18, 2008")), and the FOIR itself stayed the suspension less than two days after the Appellate Court's May 14, 2008 Opinion, during the entire proceedings Allstate was "suspended" for less than two days.

Contrary to the conclusory assertion that Allstate and its board ignored its duties stemming from the FOIR investigation, the proceedings show that the Company took action to (successfully) stay the FOIR Order and pursue an appeal, while at the same time working to ensure the subpoena was complied with to the FOIR's satisfaction. These factors do not show a "sustained or systematic failure of the board to exercise oversight."

Finally, plaintiff's citation to *McCall v. Scott*, 239 F.3d 808 (6th Cir. 2001), does not help to establish that the board faces a substantial likelihood of liability for failure to properly oversee the Company. What was present in *McCall*, and notably missing here, were not only particularized facts of potential widespread and systematic health care fraud and improper

activities by the company, but also particularized facts showing why and how a majority of the directors were *personally aware* of the practices. *Id.* at 819. The *McCall v. Scott* case involved allegations that senior management of Columbia/HCA Healthcare, one of the largest owners of for-profit hospitals in the United States, devised schemes to improperly increase revenue through health care fraud and improper acquisition practices. *Id.* at 814. The complaint there included particular facts stating why the directors were on notice of the improper practices because certain of the directors were previously officers or directors of companies that were acquired by Columbia, and, while at the prior companies, the companies were investigated for and settled allegations of questionable billing. *Id.* at 821. The complaint also cited a letter from one of the defendant-directors showing that the director "was personally involved in causing a doctor to defraud his partner out of his interest in their oncology partnership" resulting in an award of punitive damages. *Id.* The complaint also referred to search warrants being executed by "four federal agencies, the FBI, IRS, Department of HHS, and Department of Defense Criminal Investigation Service" against the company and that "federal agents raided thirty-five Columbia facilities in six more states for evidence related to" improper billing. *Id.* at 822.[3] The egregious factual predicate in *McCall* is quite different from the allegations here.

In short, plaintiff's allegations here do not establish bad faith or a willful blindness to red flags. Plaintiff nowhere alleges facts that Allstate's directors were "conscious of the fact that they were not doing their jobs," *Guttman*, 823 A.2d at 506, or made a "knowing decision not to even try to make sure the corporation's officers had developed and were implementing a prudent approach to ensuring law compliance," *Desimone*, 924 A.2d at 935. Even if certain preliminary legal or regulatory decisions were adverse to Allstate, that fact alone does not mean that the board lacked oversight or engaged in bad faith. If plaintiff's argument is accepted, every time a company faces an adverse judicial determination, a fiduciary breach by the company's board could be stated, no matter how vigorous or well-intentioned the board's oversight.

### B. Plaintiff All But Abandons Any Claim That The Directors "Lack Independence" For Any Other Reasons.

As discussed above, plaintiff's assertion that the directors lack independence due to a purported "substantial likelihood" of liability fails. In addition, plaintiff all but abandons any

---

[3] In addition, other "red flags," such as "audit information, ongoing acquisition practices, allegations brought against Columbia in a *qui tam* action, the extensive federal investigation, [and] the *New York Times*' investigation into Columbia's billing practices" were also alleged. *McCall*, 239 F.3d at 819–20.

11

claim that a majority of the board was interested or lack independence for any other reason. For instance, plaintiff does not argue that the directors would receive a personal financial benefit or were otherwise interested in the litigation decisions he challenges. Plaintiff does, however, argue that employee-directors Wilson and Liddy lack independence because they receive substantial compensation as executives at Allstate. (Pl. Resp. at 15)

Even assuming for sake of argument that the two executive directors lack independence due to their compensation from Allstate, that assertion does not advance plaintiff's argument. To show that a majority of the board could not fairly consider a demand, plaintiff would have to show that a majority of the remaining members of the board (composed of eleven outside, independent directors who are not alleged to derive significant compensation from Allstate) are somehow under the influence of the two executive directors. Plaintiff has not made this argument or set forth any particular facts to support such a claim. Thus, the Court "need not analyze the allegations specifically concerning [these two] directors because they do not constitute a majority of the board." *Postorivo*, 2008 WL 553205, at *7, n.29.

## II. EVEN IF THE *ARONSON* TEST APPLIED, PLAINTIFF'S ALLEGATIONS STILL FAIL.

Given the lack of any particularized facts showing a board decision, *Rales* supplies the appropriate test here. However, plaintiff's Complaint has not satisfied the *Aronson* test either. To satisfy *Aronson*, a plaintiff must overcome the business judgment rule, which presumes that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company" and "absent an abuse of discretion, that judgment will be respected by the courts." *Aronson*, 473 A.2d at 812. A court applying *Aronson* must "decide whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 814.

Plaintiff asserts that the second prong of *Aronson* applies here, and attempts to argue why "ratification of these [litigation] practices could never have been the valid exercise of the Director Defendants' business judgment." (Pl. Resp. at 6) As the Delaware Chancery court recently stated, "a plaintiff who seeks to excuse demand through the second prong of *Aronson* … faces a task closely akin to proving that the underlying transaction *could not have been* a good faith exercise of business judgment." *In re infoUSA, Inc. S'holders Litig.*, 2007 WL 2419611, at

12

*1 (Del. Ch. Aug 20, 2007). Only in "rare cases" will a transaction be "so egregious on its face that board approval cannot meet the test of business judgment." *Aronson*, 473 A.2d at 815.

To try to meet *Aronson*, plaintiff argues that "[h]ere, Defendants adopted or approved a scheme to repeatedly and systematically violate and defy court orders and regulatory subpoenas" (Pl. Resp. at 8), and "the Director Defendants actively, knowingly, and consciously made decisions to conceal the McKinsey reports …. Stated simply, the Board chose to evade scrutiny." (Pl. Resp. at 9) Notably, the Complaint lacks *any* facts, let alone particularized facts, to support the conclusions that the board made *any* decisions regarding the McKinsey documents or the litigation strategy. There are no facts alleged as to when such a purported "strategy" was decided, what board members discussed it or when it was purportedly decided that the "strategy" should be pursued. Clearly, there are no facts alleged that the board actually approved such a purported "scheme" involving a litigation strategy.

The lack of particular facts supporting a board action shows why this case should be analyzed under *Rales*, but, to the extent plaintiff insists that this case should be analyzed under *Aronson*, the Complaint simply does not supply the necessary facts to even permit an *Aronson* analysis. Even assuming that plaintiff could plead facts supporting that the board determined Allstate's litigation strategy, the practice of seeking to produce documents subject to a protective order is a valid and routine event in litigation. As discussed in Section I.A, there certainly are no facts alleged supporting that the discovery decisions were so egregious as to be outside the protection of the business judgment rule.

The Third Circuit's *Tower Air* case does not provide support to plaintiff. *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229 (3d Cir. 2005). Even plaintiff concedes that the case was not a derivative action (Pl. Resp. at 9, n.8), but plaintiff ignores the significance of this. The court in *Tower Air* was not applying the derivative standard requiring *facts pled with particularity*; rather, the Court applied the federal notice pleading standard, where only a "simple and brief statement of claims" was enough. *In re Tower Air*, 416 F.3d at 239. As the Third Circuit itself explained in *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 493 F.3d 393, 403 (3d Cir. 2007), "Tower Air did not deal with demand futility and applied a notice pleading standard under Federal Rule of Civil Procedure 8 instead of the heightened factual pleading standard under Federal Rule of Civil Procedure 23.1." Thus, *Tower Air* cannot speak to the level

of facts necessary to plead that the directors acted outside the protection of the business judgment rule here in a demand futility case.

Plaintiff also attempts to overcome the business judgment rule by relying on *In re Abbott*, 325 F.3d 795, 806 (7th Cir. 2003). Not only does *Abbott* fail to support plaintiff's argument, it highlights the Complaint's pleading deficiencies. In *Abbott*, the Seventh Circuit determined that enough particularized facts were alleged to support the claim that the board was aware for years of non-compliance with FDA rules, yet failed to act. The *Abbott* case involved allegations of FDA violations at Abbott's Diagnostic Division, which manufactures medical products. The complaint alleged that repeated violations of FDA rules, documented by numerous formal warning letters from the FDA copied to the Chairman of the Board, led to a consent decree with the FDA that "required Abbott to pay a $100 million civil fine to the FDA, withdraw 125 types of medical diagnostic test kits from the United States market, destroy certain inventory, and make a number of changes in its manufacturing procedures after six years of federal violations." *Id.* at 798. Unlike here, the plaintiff in *Abbott* pled specific facts which justified inferring the directors' knowledge of repeated regulatory violations, including:

- A six-year government investigation of regulatory violations, involving thirteen separate inspections of Abbott facilities occurring at the same two plants and involving the same products and the same employees. *Id.* at 799.
- Several news articles published throughout four of the six years, which report the violations and the government investigation. *Id.* at 800.
- Four "formal certified Warning Letters" sent to the Company, *three* of which were addressed to the CEO and chairman of the board, detailing violations and warning about the penalties that ultimately were imposed resulting from a failure to correct the violations. *Id.* at 799-800.
- The FDA's termination of a Voluntary Compliance Plan due to continued violations. *Id.* at 800, 806.
- A disclosure form signed by all of the directors and filed with the SEC *acknowledging noncompliance* with the FDA regulations. *Id.*

The Seventh Circuit sustained the complaint because "[a]ll of these alleged facts imply knowledge of long-term violations which had not been corrected." *Id.* at 806. There is a stark contrast between the allegations in *Abbott* and plaintiff's allegations here. Here, there are no facts alleging why the board was on notice of discovery issues in litigation proceedings, and, even if such facts were alleged, there are no facts alleged of "long-term violations which had not been corrected." As discussed in Section I.A above, while certain trial courts found that the

14

McKinsey documents should not be protected as trade secrets, appellate courts disagreed with or reversed and remanded that decision. Plaintiff cannot assume that the decision to seek trade secret protection was done in bad faith – abrogating the protection of the business judgment rule – when courts have *supported* that decision. *Aronson*, 473 A.2d at 815 (transaction must be "so egregious on its face that board approval cannot meet the test of business judgment.")

Moreover, the allegations regarding the FOIR (and the subsequent events before the FOIR) do not show "considered inaction" on the part of the Allstate board. As the Complaint alleges, the FOIR subpoena was served in mid-October 2007 (Compl. ¶ 43), and only a few months later, on January 17, 2008, the FOIR suspended Allstate from writing new business in Florida. (*Id.* ¶ 54) The suspension, however, was stayed the very next day by the Florida Appellate Court. (Ex. A, 5/16/2008 FOIR Order ¶ 5) In the meantime, Allstate appealed the FOIR order, and at the same time continued to produce over 825,000 pages of documents to the FOIR. While the Florida Appellate Court's May 14, 2008 decision upheld the FOIR's authority to suspend Allstate, on May 16 the FOIR entered a new order finding that "Allstate appears to have provided those documents requested by the Office" and suspended the stay. *Id.* ¶ 8. The short time frame, and ultimate resolution of the FOIR issue, does not come close to the "considered inaction" that was addressed in *In re Abbott*.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in defendants' opening brief, defendants request that the Court dismiss this action pursuant to Rule 23.1 for failure to plead with particularity that a demand on the Board would be futile.

Dated: May 22, 2008                                Respectfully submitted,

/s/ Jonathan E. Hinkemeyer                         /s/ Peter C. John
Robert J. Kopecky                                  Peter C. John
Sallie G. Smylie, P.C.                             Steven J. Roeder
Jonathan E. Hinkemeyer                             WILLIAMS MONTGOMERY & JOHN LTD
KIRKLAND & ELLIS LLP                               20 North Wacker Drive, Suite 2100
200 E. Randolph Drive                              Chicago, Illinois 60606
Chicago, Illinois 60601                            (312) 443-3200
(312) 861-2000

                                                   Greg A. Danilow
*Counsel for Allstate Corporation*                 Stephen A. Radin
                                                   WEIL, GOTSHAL & MANGES LLP
                                                   767 Fifth Avenue
                                                   New York, NY 10153
                                                   (212) 310-8000

                                                   *Counsel for Individual Defendants*

## **CERTIFICATE OF SERVICE**

       I, Jonathan E. Hinkemeyer, an attorney, hereby certify that on May 22, 2008, I electronically filed the foregoing **Reply Memorandum in Further Support of Defendants' Motion to Dismiss For Failure to Adequately Plead Demand Futility** with the Clerk of Court using the CM/ECF system which sent notification of such filings to all counsel of record.

                                                                 /s/ Jonathan E. Hinkemeyer