# Exhibit 1

Case 1:08-cv-00423    Document 33-2    Filed 07/08/2008    Page 2 of 8

Westlaw.

--- A.2d ----                                                                                    Page 1
--- A.2d ----, 2008 WL 2600981 (Del.Supr.)
(Cite as: --- A.2d ----, 2008 WL 2600981 (Del.Supr.))

Wood v. Baum
Del.Supr.,2008.
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

Supreme Court of Delaware.
Paddy WOOD, Plaintiff Below, Appellant,
v.
Charles C. BAUM, Richard O. Berndt, Eddie C. Brown, Michael L. Falcone, Robert S. Hillman, Mark K. Joseph, Barbara B. Lucas, Douglas A. McGregor, Arthur S. Mehlman, and Fred N. Pratt, Jr., Defendants Below, Appellees,
andMunicipal Mortgage & Equity, LLC, a Delaware corporation, Nominal Defendant Below, Appellee.
No. 621, 2007.

Submitted: May 21, 2008.
Decided: July 1, 2008.

Court Below: Court of Chancery of the State of Delaware, C.A. No. 2404.
Upon Appeal from the Court of Chancery. **AFFIRMED.**

Carmella P. Keener, Esquire, of Rosenthal, Monhait & Goddess, P.A ., Wilmington, Delaware; Of Counsel: Christopher S. Hinton, Esquire (argued), of The Hinton Law Firm, New York, New York; for Appellant.
Kenneth J. Nachbar, Esquire, of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware; Of Counsel: James B. Weidner, Esquire, of Clifford Chance U.S. LLP, New York, New York; Jon R. Roellke (argued), and Anthony R. Van Vuren, Esquires of Clifford Chance U.S. LLP, Washington, D.C.; for Appellees.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

JACOBS, Justice.
*1 Paddy Wood, the plaintiff below, appeals from the dismissal by the Court of Chancery of her derivative action on behalf of Municipal Mortgage & Equity, LLC ("MME"). For the reasons set forth, we affirm.

*FACTS*

MME, a Delaware limited liability company with its principal place of business in Baltimore, Maryland, "provides debt and equity financing to various parties, invests in tax-exempt bonds and other housing-related debt and equity investments, and is a tax credit syndicator that acquires and transfers low-income housing tax credits."MME has a ten-member Board of directors, of which two are inside directors. MME's Amended and Restated Certificate of Formation and Operating Agreement (the "Operating Agreement") exempts directors from any liability "except in the case of fraudulent or illegal conduct of such person."[FN1]

> FN1. Section 8.1(a) of the Operating Agreement provides: "No director or officer of the Company shall be liable, responsible, or accountable in damages or otherwise to the Company or any Shareholders for any act or omission performed or omitted by him or her, or for any decision, except in the case of fraudulent or illegal conduct of such person."The corollary indemnification provisions are set out in Section 8.1(b) of the Operating Agreement.

Plaintiff's complaint, filed on September 7, 2006, named as defendants the ten then-current members of MME's Board and one former director. Five of the defendants were also members of MME's Audit Committee. On October 20, 2006, the defendants

--- A.2d ---- , 2008 WL 2600981 (Del.Supr.)
(Cite as: --- A.2d ----, 2008 WL 2600981 (Del.Supr.))

Case 1:08-cv-00423    Document 33-2    Filed 07/08/2008    Page 3 of 8

Page 2

moved under Court of Chancery Rule 23.1[FN2] to dismiss the initial complaint, for failure to make a pre-suit demand on the Board. Plaintiff subsequently filed an amended complaint (the "Complaint") under Court of Chancery Rule 15(aaa).[FN3] The Complaint set forth a myriad of allegations that are fairly summarized as follows:

> FN2. Ch. Ct. R. 23.1(a) relevantly provides: "In a derivative action brought by one or more shareholders or members to enforce a right of a corporation ... the complaint shall allege ... with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort."

> FN3. Ch. Ct. R. 15(aaa) relevantly provides: "Notwithstanding subsection (a) of this Rule, a party that wishes to respond to a motion to dismiss under Rule 12(b)(6) or 23.1 by amending its pleading must file an amended complaint ... no later than the time such party's answering brief in response to either of the foregoing motions is due to be filed."

(a) The defendants breached their fiduciary duties by causing MME to improperly value certain non-performing assets in violation of MME's internal policies, GAAP and SEC standards, in particular Financial Accounting Standard 115 ("FAS 115"). As a result, MME issued false financial statements concerning the value and performance of those assets.

(b) The defendants breached their fiduciary duties by causing MME to make improper charitable contributions, some of which were related-party transactions. The beneficiaries used those contributions to service debt held by MME, thereby concealing the deterioration of MME's tax-exempt bond portfolio.

(c) The defendants breached their fiduciary duties by causing MME to execute a series of "related party transactions involv[ing] transfers of the securitized property via deeds in lieu of foreclosures from affiliated companies followed by near simultaneous resales of the same property at enormous profits." The effect was significantly to inflate MME's financial performance.

(d) The defendants breached their *Caremark* duties FN4 by "fail[ing] properly to institute, administer and maintain adequate accounting and reporting controls, practices and procedures," which resulted in a "massive restatement process, an SEC investigation, and loss of substantial access to financial markets."

> FN4. *See In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch.1996); *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 364 (Del.2006).

On March 21, 2007 and April 10, 2007, the defendants renewed their motion to dismiss the Complaint. After oral argument, the Court of Chancery, ruling from the bench, dismissed the Complaint for failure to allege particularized facts sufficient to establish that demand on the Board would have been futile. The Court of Chancery noted that "though the complaint is 80-some pages long and is a model of prolixity, it fails to state any basis on which the Court could reasonably conclude that the demand futility standard is met." This appeal followed.

### ANALYSIS

*2 Our review of a Court of Chancery decision dismissing a derivative suit under Court of Chancery Rule 23.1 is *de novo* and plenary.[FN5] "The Court should draw all *reasonable* inferences in the plaintiff's favor. Such reasonable inferences must logically flow from particularized facts alleged by the plaintiff. '[C]onclusory allegations are not considered as expressly pleaded facts or factual inferences.' Likewise, inferences that are not objectively

reasonable cannot be drawn in the plaintiff's favor."[FN6]

> FN5. *Brehm v. Eisner,* 746 A.2d 244, 253 (Del.2000).
>
> FN6. *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,* 845 A.2d 1040, 1048 (Del.2004) (citing *Brehm,* 746 A.2d at 253; *White v. Panic,* 783 A.2d 543, 549 (Del.2001)) (emphasis in original).

A stockholder may not pursue a derivative suit to assert a claim of the corporation unless the stockholder: (a) has first demanded that the directors pursue the corporate claim and the directors have wrongfully refused to do so; or (b) establishes that pre-suit demand is excused because the directors are deemed incapable of making an impartial decision regarding the pursuit of the litigation.[FN7] Having failed to make a pre-suit demand upon MME's Board, plaintiff must establish demand futility.

> FN7. *Id.* (citing *Rales v. Blasband,* 634 A.2d 927, 932 (Del.1993)).

The controlling legal standard for determining the sufficiency of a complaint to withstand dismissal based on a claim of demand futility under Court of Chancery Rule 23.1 is well-established. Two tests are available to determine whether demand is futile. The *Aronson* test applies to claims involving a contested transaction *i.e.,* where it is alleged that the directors made a conscious business decision in breach of their fiduciary duties. That test requires that the plaintiff allege particularized facts creating a reason to doubt that "(1) the directors are disinterested and independent [or that] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment."[FN8] Only the second (and alternative) prong is implicated here because the plaintiff does not contest that a majority of the Board is generally independent and disinterested (except as discussed below). The second (*Rales*) test applies where the subject of a derivative suit is not a business decision of the Board but rather a violation of the Board's oversight duties. The *Rales* test requires that the plaintiff allege particularized facts establishing a reason to doubt that "the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."[FN9]

> FN8. *Aronson v. Lewis,* 473 A.2d 805, 814 (Del.1984).
>
> FN9. *Rales v. Blasband,* 634 A.2d 927, 934 (Del.1993).

To satisfy either test, a plaintiff must "comply with stringent requirements of factual particularity" of Court of Chancery Rule 23. 1.[FN10] Here, the plaintiff attempted to create a "reasonable doubt" that the Board would have properly exercised its business judgment by alleging that the Board was disabled because of a substantial risk of personal liability.[FN11] In evaluating that claim, it must be kept in mind that the exculpation provision contained in MME's Operating Agreement exempts MME's directors from all liability except in case of "fraudulent or illegal conduct." Section 18-1101(e) of the Delaware Limited Liability Company Act ("LLCA") allows a limited liability company, such as MME, to "provide for the limitation or elimination of any and all liabilities ... for breach of duties (including fiduciary duties) of a [director]," except that the LLC "may not limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing."[FN12] Therefore, under the Operating Agreement and the LLCA, the MME directors' exposure to liability is limited to claims of "fraudulent or illegal conduct," or "bad faith violation[s] of the implied contractual covenant of good faith and fair dealing."-

> FN10. *Brehm v. Eisner,* 746 A.2d 244, 254 (Del.2000).
>
> FN11. In *Aronson,* this Court held that "the mere threat of personal liability ... is insuf-

ficient to challenge either the independence or disinterestedness of directors" and that a reasonable doubt that a majority of directors is incapable of considering demand should only be found where "a substantial likelihood of personal liability exists."*Aronson,* 473 A.2d at 814.*See also Rales,* 634 A.2d at 936;*In re Baxter Int'l, Inc. S'holders Litig.,* 654 A.2d 1268, 1269 (Del. Ch.1995).

FN12.6 *Del. C.* § 18-1101(e).

*3 Where directors are contractually or otherwise exculpated from liability for certain conduct, "then a serious threat of liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim against the directors based on particularized facts."FN13Where, as here, directors are exculpated from liability except for claims based on "fraudulent," "illegal" or "bad faith" conduct, a plaintiff must also plead particularized facts that demonstrate that the directors acted with scienter, *i.e.,* that they had "actual or constructive knowledge" that their conduct was legally improper.FN14Therefore, the issue before us is whether the Complaint alleges particularized facts that, if proven, would show that a majority of the defendants knowingly engaged in "fraudulent" or "illegal" conduct or breached "in bad faith" the covenant of good faith and fair dealing. We conclude that the answer is no.

FN13.*Guttman v. Huang,* 823 A.2d 492, 501 (Del. Ch.2003) (citing *Baxter,* 654 A.2d at 1270) (emphasis in original).*Accord, Stone ex rel. AmSouth Bancorporation v. Ritter,* 911 A.2d 362, 367 (Del.2006).

FN14.*See, e.g., Malpiede v. Towson,* 780 A.2d 1075 (Del.2001); *Emerald Partners v. Berlin,* 787 A.2d 85 (Del.2001).*See also, e.g., Desimone v. Barrows,* 924 A.2d 908, at 933-35 (Del. Ch.2007).

First, plaintiff has not pled with particularity any claim based on fraudulent conduct. The Complaint does not even purport to state a cause of action for fraud, let alone plead the specific facts required to support such a claim. Instead, the Complaint only alleges conclusorily that the defendants made "affirmative misrepresentations" and "actively condoned and facilitated a campaign of deceit."Such assertions are insufficient to state an actionable claim for fraud.FN15

FN15.*See, e.g., Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs., Inc.,* 854 A.2d 121, 143-44 (Del. Ch.2004) (discussing the requirements for stating a claim for fraud under Court of Chancery Rule 9 and noting that "[t]he circumstances which shall be stated with particularity in Rule 9(b) refer to the time, place and contents of the false representations, the facts misrepresented, as well as the identity of the person making the misrepresentation and what he obtained thereby").

Second, the Complaint alleges many violations of federal securities and tax laws but does not plead with particularity the specific conduct in which each defendant "knowingly" engaged, or that the defendants knew that such conduct was illegal.FN16Before oral argument, this Court directed the plaintiff to identify "the particularized pleaded facts that, if true, would establish that the directors had actual or constructive knowledge that the various acts or omissions complained of were wrongful ... [and] the paragraph[s] of the [C]omplaint where such knowledge is specifically alleged."The facts plaintiff identified in response to that request fell into four main categories: (a) the defendants executed MME's annual reports and other publicly filed financial reports; (b) the defendants authorized certain transactions; (c) five of the defendants served on MME's Audit Committee; and (d) other "red flags." None of the acts identified by plaintiff establish that the directors knowingly participated in illegal conduct.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----
--- A.2d ----, 2008 WL 2600981 (Del.Supr.)
(Cite as: --- A.2d ----, 2008 WL 2600981 (Del.Supr.))

Case 1:08-cv-00423   Document 33-2   Filed 07/08/2008   Page 6 of 8

Page 5

FN16. *Rattner v. Bidzos,* 2003 WL 22284323, at *13 (Del. Ch. Ct.) (holding that demand was not excused where the complaint "is quick to prattle off numerous alleged infractions of laws, rules and principles [but never indicates] the accounting procedures employed by the company or the Board's involvement in [the company's] financial recording and reporting systems"). *See also Desimone v. Barrows,* 924 A.2d 908, 938-39 (Del. Ch.2007) (board approval of backdated options did not create inference that the directors knew that the options were improper).

The Board's execution of MME's financial reports, without more, is insufficient to create an inference that the directors had actual or constructive notice of any illegality.[FN17] Plaintiff contends that the Court of Chancery should have inferred that the Board "had knowledge of certain transactions because [the Board] had to authorize the transactions." Specifically, plaintiff argues, such knowledge should be inferred because the alleged transactions were "related party transactions" that the Board was required to approve under MME's Operating Agreement. Delaware law on this point is clear: board approval of a transaction, even one that later proves to be improper, without more, is an insufficient basis to infer culpable knowledge or bad faith on the part of individual directors.[FN18] We conclude that the Court of Chancery correctly applied Delaware law in declining to infer from the Board's approval either that (i) each member of the Board knew that the alleged transactions were improper or that (ii) the Board consciously and in bad faith failed to discharge fiduciary or contractual responsibilities with respect to those transactions.

FN17. *See, e.g., Guttman v. Huang,* 823 A.2d 492, 498 (Del. Ch.2003) (dismissing complaint that was "devoid of any pleading regarding the full board's involvement in the preparation and approval of the company's financial statements" and of "particularized allegations of fact demonstrating that the outside directors had actual or constructive notice of the accounting improprieties.")

FN18. *Aronson v. Lewis,* 473 A.2d 805, 814 (Del.1984) (holding that "mere directorial approval of a transaction, absent particularized facts supporting a breach of fiduciary duty claim, or otherwise establishing the lack of independence or disinterestedness of a majority of the directors, is insufficient to excuse demand").

*4 Plaintiff also asserts that membership on the Audit Committee is a sufficient basis to infer the requisite scienter. That assertion is contrary to well-settled Delaware law. In *Rattner v. Bidzos,* for example, the Court of Chancery declined to infer that the directors had a culpable state of mind based on allegations that certain board members served on an audit committee and, as a consequence, should have been aware of the facts on which the plaintiff premised her interpretation of "SEC rules and regulations, and FSAB and GAAP standards."[FN19]

FN19. *Rattner v. Bidzos,* 2003 WL 22284323, at *12-13 (Del. Ch. Ct.) (noting that "conspicuously absent from any of the Amended Complaint's allegations are particularized facts regarding the Company's internal financial controls during the Relevant Period, notably the actions and practices of [the company's] audit committee" and "any facts regarding the Board's involvement in the preparation of the financial statements and the release of financial information to the market," and rejecting plaintiff's asserted inferences where the court was "unable to conclude that a majority of the Board faces a substantial likelihood of liability for failing to oversee [the company's] compliance with required accounting and disclosure standards").

Finally, plaintiff claims that the Board knowingly

--- A.2d ----
--- A.2d ----, 2008 WL 2600981 (Del.Supr.)
(Cite as: --- A.2d ----, 2008 WL 2600981 (Del.Supr.))

Case 1:08-cv-00423    Document 33-2    Filed 07/08/2008    Page 7 of 8    Page 6

ignored "red flags."[FN20] Under Delaware law, red flags "are only useful when they are either waved in one's face or displayed so that they are visible to the careful observer."[FN21] Here, the Court of Chancery correctly concluded that there were no cognizable "red flags" from which it could be inferred that the defendants knew that FAS 115 was being improperly applied, or that the defendants otherwise consciously and in bad faith ignored the improprieties alleged in the complaint.

> FN20. *See Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362 (Del.2006).
>
> FN21. *In re Citigroup Inc. S'holders Litig.*, 2003 WL 21384599, at *2 (Del. Ch. Ct.).

Third, the Complaint does not purport to allege a "bad faith violation of the implied contractual covenant of good faith and fair dealing." The implied covenant of good faith and fair dealing is a creature of contract, distinct from the fiduciary duties that the plaintiff asserts here.[FN22] The implied covenant functions to protect stockholders' expectations that the company and its board will properly perform the *contractual* obligations they have under the operative organizational agreements.[FN23] Here, the Complaint does not allege any contractual claims, let alone a "bad faith" breach of the implied contractual covenant of good faith and fair dealing. Nor, as discussed above, does the Complaint contain any particularized allegations that the defendants acted with the requisite scienter (in "bad faith").

> FN22. *E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436 (Del.1996); *Blue Chip Capital Fund II Ltd. P'ship v. Tubergen*, 906 A.2d 827, 833 (Del. Ch.2006) (dismissing fiduciary duty claims that overlap with an alleged breach of the implied covenant of good faith and fair dealing).
>
> FN23. *See Gale v. Bershad*, 1998 WL 118022, at *5 (Del. Ch.1998) (holding that "[t]o allow a fiduciary duty claim to coexist in parallel with an implied contractual claim, would undermine the primacy of contract law over fiduciary law in matters involving the essentially contractual rights and obligations of [the] shareholders").

This case is but another replay of other similar cases where the plaintiff failed to allege with particularity any facts from which it could be inferred that particular directors knew or should have been on notice of alleged accounting improprieties, and any facts suggesting that the board knowingly allowed or participated in a violation of law.[FN24] In such cases, the failure to allege particularized facts is frequently compounded by a failure to make a statutory "books and records" request concerning the matters alleged and the Board's consideration of such matters.[FN25] Here, plaintiff could have, but chose not to, make a books and records request pursuant to the LLCA.[FN26] Given the broad exculpating provision contained in MME's Operating Agreement, the plaintiff's factual allegations are insufficient to establish demand futility.

> FN24. *See, e.g., Stone v. Ritter*, 911 A.2d 362; *Guttman v. Huang*, 823 A.2d 492 (Del. Ch.2003); *Rattner v. Bidzos*, 2003 WL 22284323; *Desimone v. Barrows*, 924 A.2d 908 (Del. Ch.2007); *In re Citigroup Inc. S'holders e Litig.*, 2003 WL 21384599 (Del. Ch. Ct.); *David B. Shaev Profit Sharing Account v. Armstrong*, 2006 WL 391931 (Del. Ch. Ct.); *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961 (Del. Ch.2003), *aff'd* 845 A.2d 1040 (Del.2004).
>
> FN25. *See, e.g., Desimone*, 924 A.2d at 951 (failure to make a books and records demand rendered plaintiff "unable to plead any facts about what the ... board did, when they did it, what they discussed, what conclusions they reached, and why the board did or did not do anything");

--- A.2d ----
--- A.2d ----, 2008 WL 2600981 (Del.Supr.)
(Cite as: --- A.2d ----, 2008 WL 2600981 (Del.Supr.))

Case 1:08-cv-00423    Document 33-2    Filed 07/08/2008    Page 8 of 8

Page 7

*Beam v. Stewart,* 845 A.2d at 1057 n. 52 ("plaintiff should pursue a books and records inspection in order to secure the facts necessary to support an allegation of demand futility if the factual allegations would otherwise fall short").

FN26. 6 *Del. C.* § 18-305 (providing shareholders with certain rights to obtain "information regarding the status of the business and financial condition of [a] limited liability company").

### CONCLUSION

For the reasons set forth above, the judgment of the Court of Chancery is affirmed.

Del.Supr.,2008.
Wood v. Baum
--- A.2d ----, 2008 WL 2600981 (Del.Supr.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.